Indumati ROY, Plaintiff–Appellant,

v.

TEACHERS INSURANCE AND ANNUI-
TY ASSOCIATION and College Retire-
ment Equities Fund, Defendants–Appel-
lees.

No. 891, Docket 88–7856.

United States Court of Appeals,
Second Circuit.

Argued Feb. 27, 1989.

Decided June 14, 1989.

Edgar Pauk, New York City (Legal Ser-
vices for the Elderly, New York City, of
counsel), for plaintiff-appellant.

Albert J. Millus, Jr., Binghamton, N.Y.
(Hinman, Howard & Kattell, Binghamton,
N.Y., Margaret Byrne, TIAA/CREF, New
York City, of counsel), for defendants-ap-
pellees.

Before PIERCE and ALTIMARI,
Circuit Judges, and KELLEHER,
District Judge.*

ALTIMARI, Circuit Judge:

In this case, we examine the applicability
of the Employee Retirement Income Securi-
ty Act of 1974, 29 U.S.C. § 1001 *et seq.*
("ERISA") to the New York State Universi-
ty Optional Retirement Program, N.Y.
Educ.Law §§ 390–397 (McKinney 1988)
("Optional Retirement Program"). Plain-
tiff-appellant Indumati Roy filed a com-
plaint in the United States District Court
for the Northern District of New York
(McAvoy, J.) attempting to recover benefits
from her late husband's participation in the
Optional Retirement Program. Plaintiff,
who was not named as a beneficiary of her
husband's pension plan, sought benefits un-
der ERISA's surviving spouse annuity pro-
vision, 29 U.S.C. § 1055. The district
court, however, found the Optional Retire-
ment Program to be a "governmental plan"
and, as such, exempt from ERISA cover-
age. *See* 29 U.S.C. § 1003(b)(1). Conse-
quently, the court dismissed plaintiff's
complaint for lack of subject matter juris-

---

* Honorable Robert J. Kelleher, Senior District
Judge of the United States District Court for the
Central District of California, sitting by designa-
tion.

diction pursuant to Fed.R.Civ.P. 12(b)(1). On this appeal, as in the district court, plaintiff contends that the Optional Retirement Program was not exempt from ERISA because it was not both established *and* maintained by the state. For the reasons stated below, we affirm the decision of the district court.

## BACKGROUND

The Optional Retirement Program was established by the New York State Legislature in 1964. 1964 N.Y.Laws ch. 337. It was enacted to provide an alternative to existing retirement programs available to professional employees of the State University of New York ("SUNY"). *See* Statement of Governor Rockefeller upon approving L.1964, chs. 335–338, *reprinted in* 1964 McKinney's Session Laws of New York 1958, 1959. The impetus for enacting the Optional Retirement Program was that SUNY was at "a distinct competitive disadvantage in recruiting new faculty members" because the existing retirement plans were not portable. *Id.* Thus, the legislative goal in promulgating the Optional Retirement Program was to provide a program which would "permit[ ] younger faculty members to preserve their mobility and more experienced faculty members to retain retirement coverage started in other universities." *Id.*

To achieve this goal, the Optional Retirement Program provides for the purchase of contracts providing retirement and death benefits from insurers designated by SUNY's board of trustees. N.Y.Educ.Law § 391. Once purchased, the contracts become the property of the covered SUNY employee. *Id.* at § 391(1). SUNY, however, must "approve the form and content of such contracts," *id.* at § 391(2), and "provide for the administration" of the Optional Retirement Program. *Id.* at § 391(3). In addition, vesting and eligibility requirements are determined by SUNY, *id.* at § 390(3), and the program is funded by New York State through SUNY. *Id.* at § 392. Defendants Teachers Insurance and Annuity Association and College Retirement Equity Fund (collectively "TIAA/CREF"), respectively, a non-profit and a not-for-profit issuer of insurance policies that fund college retirement plans, have been designated as insurers of the Optional Retirement Program.

Prabir Roy was a member of the teaching faculty of SUNY at Binghamton. In 1970, he elected to participate in the Optional Retirement Program. Accordingly, he entered into retirement annuity contracts with TIAA/CREF. Upon entering the program, Prabir Roy named Indumati Roy, his wife, as beneficiary in the event of his death. In 1983, however, Prabir Roy executed a new designation of beneficiary, naming his brother Tapon Roy to replace his wife as beneficiary. Subsequently, Indumati Roy initiated divorce proceedings against Prabir Roy.

Prabir Roy died in December 1986, before the divorce was final. Both Tapon Roy and Indumati Roy demanded payment of death benefits from TIAA/CREF. The former sought benefits as the named beneficiary of Prabir Roy's annuity contract; the latter sought the surviving spouse annuity provided by ERISA, 29 U.S.C. § 1055. TIAA/CREF denied Indumati Roy's claim and paid the benefits to Tapon Roy in May 1987.

## DISCUSSION

Title I of ERISA, which includes the provision for surviving spouse benefits sought by plaintiff, does "not apply to any employee benefit plan if ... such plan is a governmental plan." 29 U.S.C. § 1003(b). For purposes of Title I, a "governmental plan" is defined as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." *Id.* at § 1002(32). Plaintiff contends that the district court erred in determining that the Optional Retirement Program was a governmental plan. Plaintiff concedes that the plan at issue was established by a governmental entity. She argues, however, that a plan is not exempt from ERISA coverage

unless it is also maintained by a governmental entity. We disagree.

"The starting point in statutory interpretation is 'the language [of the statute] itself.'" *United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)). A court must "assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (quoting *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)). Thus, "[a]bsent a clearly expressed legislative intention to the contrary, [the language used] must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Congress enacted ERISA to curb abuses which were rampant in the *private* pension system. *See generally* H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639 ("*House Report*"). *See also* 29 U.S.C. § 1001. While ERISA was under consideration, some thought was given toward applying it to public sector employee benefit plans. *See House Report* at 4647. Mindful of the principles of federalism, however, Congress opted to remove such plans from ERISA's scope. The governmental plan exemption embodied in section 1003(b) evinces "Congress' intent to refrain from interfering with the manner in which state and local governments operate employee benefit systems." *Feinstein v. Lewis*, 477 F.Supp. 1256, 1261 (S.D.N.Y.1979), *aff'd*, 622 F.2d 573 (2d Cir.1980). Likewise, the definition of "governmental plan" contained in section 1002(32) was drafted in accordance with Congress' goal of preserving federalism.

We have previously considered the "established or maintained" clause of section 1002(32) in *Rose v. Long Island Railroad Pension Plan*, 828 F.2d 910 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1112, 99 L.Ed.2d 273 (1988). In that case, we determined that the pension plan covering the employees of the Long Island Railroad ("LIRR") was exempt from ERISA because it was a governmental plan. As in the instant case, the plaintiff in *Rose* argued that the disputed clause of section 1002(32) should be read as "established *and* maintained." *Id.* at 919.

The issue presented in *Rose* was a thorny one in that the LIRR began as a private stock corporation but later became a governmental entity. *See id.* at 915. We recognized that in the context of employers whose status changes from private to public sector, or vice versa, either the literal or suggested reading of section 1002(32) could lead to results inconsistent with the purpose of the governmental exemption. *See id.* at 919–20. For example, application of the "established *or* maintained" standard to "a plan which was originally established by a governmental body but subsequently taken over by a private entity," *id.* at 919, would leave the now-private plan unregulated. In contrast, if "a plan is required to have been both established *and* maintained by a governmental entity in order to qualify for exemption, then a plan which was established by a private entity but subsequently taken over by a governmental body would continue to be subject to ERISA." *Id.* at 920. We noted that in those two situations, the status of the entity that maintains the pension plan—i.e., the status of the then-current employer—"bears more relation to Congress' goals in enacting ERISA and its various exemptions, than does the status of the entity which established the plan." *Id.*

Despite the anomaly which could result from a literal reading, we did not agree in *Rose* "that the correct interpretation of § 1002(32) was *established and maintained.*" *Id.* Nevertheless, we found that the pension plan there at issue was both established and maintained by a governmental entity. *Id.* We now address whether a plan must be maintained by a governmental entity in order to fall within the governmental plan exemption from ERISA.

The use of the conjunction "or" in section 1002(32) "indicates that a plan is a governmental plan if it is *either* established *or* maintained by a government body for its employees." *Feinstein,* 477 F.Supp. at 1260 (emphasis original). This literal interpretation has been employed by courts which, without any consideration of the issue of maintenance, have found plans to be exempt from ERISA merely because they were established by governmental entities. *See Brown v. Northwestern Nat'l Life Ins. Co.,* No. 87–2375, 1987 WL 18813 (E.D.La. Oct. 21, 1987). *Cf. Krupp v. Lincoln Univ.,* 663 F.Supp. 289, 292 (E.D.Pa. 1987) (ERISA exempts plans "established by state and local governments"); *Accident Fund v. Baerwaldt,* 545 F.Supp. 1030, 1038 (W.D.Mich.1982) ("ERISA do[es] not apply to a pension plan established by the State"). Viewing the "established or maintained" clause of section 1002(32) in the context of the record on this appeal, "we do not find that the legislative history of the statute justifies departure from the plain words of the statute." *James,* 478 U.S. at 606, 106 S.Ct. at 3123.

In exempting governmental plans from ERISA, Congress "was concerned more with the governmental nature of public employees and public employers than with the details of how a plan was established or maintained." *Feinstein,* 477 F.Supp. at 1262. The Optional Retirement Program was established by the State of New York to provide benefits for employees of SUNY. Unlike the entities discussed in *Rose,* SUNY's governmental status has not been altered. Moreover, New York's continued interest in the Optional Retirement Program is evidenced by, among other things, the state's amendment of the plan from noncontributory to contributory. *See Coller v. State University of New York,* 80 A.D.2d 166, 439 N.Y.S.2d 474 (3d Dep't 1981); *see also* N.Y.Educ.Law § 391. We think it clear that the congressional goal of preserving federalism requires that when a pension plan has been established by a governmental entity for its employees and the governmental entity's status as employer has not changed, the plan must be exempt from ERISA as a governmental

plan. In view of this holding, we find it unnecessary to determine whether New York currently "maintains" the Optional Retirement Program within the meaning of section 1002(32).

## CONCLUSION

For all of the foregoing reasons, the judgment of the district court is affirmed.