**Janice K. SIMAC, Plaintiff,**

v.

**HEALTH ALLIANCE MEDICAL PLANS, INC., Defendant.**

No. 97–3101.

United States District Court, C.D. Illinois, Springfield Division.

April 10, 1997.

Ralph H. Loewenstein, Springfield, IL, Arthur M. Gorov, CHicago, IL, for Plaintiff.

Richard Chapin, Champaign, IL, for Defendant.

### OPINION

RICHARD MILLS, District Judge:

An urgent case to determine rights under a health plan.

The plan, however, is a "governmental plan" under ERISA.

Therefore, this Court lacks jurisdiction and the matter must proceed in state court.

## I. BACKGROUND

On April 7, 1997 Janice K Simac filed this action seeking declaratory and injunctive relief against Health Alliance Medical Plans, Inc. (Health Alliance). Simac suffers from life threatening breast cancer. Simac's physicians recommend that she receive High–Dose Chemotherapy supported by Peripheral Stem Cell Rescue (HDCT/PSCR).[1] According to the Complaint, Health Alliance has refused to preauthorize treatment because the treatment is not medically necessary or is experimental or investigational.

Simac is employed by the University of Illinois at Springfield. Simac receives health coverage from Health Alliance because she is a member of the Health Alliance Health Maintenance Organization (Health Alliance HMO). The Health Alliance HMO is one of several health coverage options available to employees of the State of Illinois pursuant to the State Employees Group Insurance Act of 1971, 5 ILCS §§ 375/1–375/17 (West 1993 & Supp.1996), which requires the State of Illinois to provide health insurance to its employees. The act authorizes the Director of the Illinois Department of Central Management Services to "contract or otherwise make available group life insurance, health benefits and other employee benefits to eligible members and, where elected, their eligible dependents." 5 ILCS § 375/5 (West 1993). The act also sets detailed requirements for plans providing health coverage to state employees. 5 ILCS §§ 375/6, 375/6.4 (West 1993 & Supp.1996). Under the act, the State of Illinois pays the cost of basic health coverage for all its employees. 5 ILCS § 375/10(a) (West Supp.1996).

## II. ANALYSIS

Health Alliance moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The sole basis Simac asserts for this Court's jurisdiction is the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001—1461 (1994). Simac has sued under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[2] ERISA 88 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), vest the district courts of the United States with jurisdiction, whatever the amount in controversy or the citizenship of the parties, over all civil actions brought under ERISA § 502(a)(1)(B). The statute also grants concurrent jurisdiction to the state courts.

ERISA applies to all employee benefit plans established and maintained by employers engaged in commerce or industries engaged in commerce. 29 U.S.C. § 1003(a). Under 29 U.S.C. § 1003(b)(1), however, "[t]he provisions of this subchapter shall not apply to any employee benefit plan if—(1) such plan is a governmental plan (as defined in section 1002(32) of this title)...."[3] 29

---

1. The United States Court of Appeals for the Seventh Circuit recently offered this description of the procedure Simac seeks:

   HDC involves administering the chemotherapeutic agents used in standard chemotherapy, but at higher dosages. While HDC is more effective at killing the cancer, it is also more likely to kill the patient's stem cells, the cells which generate white blood cells, the primary component of the body's immune system. To mitigate the potential damage to the patient's immune system, doctors extract (the technical term is "harvest") some of the patient's stem cells prior to administering HDC. This harvesting process, referred to as autologous stem cell rescue (ASCR), is accomplished by one of two methods: autologous bone marrow transplant support (ABMT), in which the stem cells are harvested from the patient's bone marrow, and peripheral stem cell rescue (PSCR), in which stem cells are harvested from the patient's blood stream. Under either procedure, the harvested stem cells are frozen and stored until the HDC is complete, at which time the stem cells are reintroduced into the patient.

   *Smith v. Office of Civilian Health & Medical Program of the Uniformed Services,* 97 F.3d 950, 951 (7th Cir.1996).

2. Section 1132(a)(1)(B) permits any beneficiary of a covered plan to bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan...."

3. The subchapter referred to in § 1003(b)(1) is Subchapter I of Chapter 18 of Title 29, United States Code. This body of law is also known as Title I of the Employee Retirement Security Act of 1974 (ERISA). Title I of ERISA sets forth all the federal statutory requirements for protection

U.S.C. § 1002(32) defines the term "governmental plan" as "a plan established or maintained by the Government of the United States, by the Government of any State or political subdivision thereof, or any agency or instrumentality of any of the foregoing."

Health Alliance argues that, at least with respect to Simac, it is a governmental plan. If the Health Alliance HMO is a governmental plan, ERISA does not apply, and if so, the Court lacks subject matter jurisdiction.[4]

This case raises a seemingly simple question: Is the Health Alliance HMO a "governmental plan"? The plan at issue in this case would unquestionably fall within the governmental plan exception if the State of Illinois actually administered and operated it. But the State does not. Instead, the State has contracted with several private businesses, including Health Alliance, to provide statutorily mandated health coverage. Does that delegation take the health plans outside the scope of the governmental plan exception? The Court finds that it does not.

As in every case involving statutory interpretation and application, the first place to look for the answer is in the text of the statute itself.[5] If ERISA covers the Health Alliance HMO, it does so because the HMO is an "employee welfare benefit plan." See 29 U.S.C. § 1002(1). An employee welfare benefit plan is:

[A]ny plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or maintained for the purpose of providing for its participants or

their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits....

*Id.* Simply put, an employee welfare benefit plan is a program set up by an employer to provide benefits other than salary or pensions to its employees. Applying that definition to this case reveals that the State of Illinois established an employee welfare benefit plan when it mandated that all state employees receive basic health coverage. Viewed this way; it is obvious that the plan at issue in this case is a governmental plan exempt from ERISA because the State of Illinois established an employee welfare benefit plan for its employees when it contracted to buy insurance for them from various private sources.[6]

A practical next step in statutory interpretation is a survey of judicial decisions to determine whether other courts have reached the same or different conclusions about the meaning of the relevant statutory language. The case law on this point is sparse. In fact, some courts have simply skipped the question of whether a private insurer can be a governmental plan and assumed that a plan operating under contract with state or local government falls within the governmental plan exception. See *Shirley v. Maxicare Texas, Inc.*, 921 F.2d 565, 567 (5th Cir.1991).

Other courts, however, have analyzed the problem at hand more thoroughly In particular, the United States Court of Appeals for the Ninth Circuit analyzed the precise question raised in this case in *Silvera v. Mutual Life Insurance Co. of New York*, 884 F.2d

of employee benefits. Among the provisions of Title I of ERISA is the provision which Plaintiff claims gives this Court jurisdiction, 29 U.S.C. § 1132(a)(1)(B).

4. Plaintiff has not offered, nor can the Court identify, any alternate basis for this Court to exercise its limited jurisdiction. The Complaint raises no issues of federal law other than a claim under ERISA. Furthermore, the parties are not of diverse citizenship (although the amount in controversy certainly exceeds $75,000).

5. "The starting point in statutory interpretation is 'the language [of the statute] itself.'" *United States v. James*, 478 U.S. 597, 604, 106 S.Ct.

3116, 3120, 92 L.Ed.2d 483 (1986) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)) (alteration in original).

6. A government entity does not need to establish *and* maintain a plan for the plan to be considered a governmental plan. Instead, ERISA states that a plan "established *or* maintained by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32) (emphasis added). See *Roy v. Teachers Insurance and Annuity Association*, 878 F.2d 47, 48–49 (2d Cir.1989) (enforcing the plain language of the statute).

423 (9th Cir.1989). In *Silvera*, an employee of the City of Oroville, California sued his insurer over several rejected claims for health coverage. *Id.* at 424. The City had contracted with the insurer to provide insurance coverage to all city employees. The insurer argued that it was not a governmental plan because, inter alia, the insurer, not the City, "designed and set up the plan, administered it on behalf for the employees, and was ultimately liable for the payment of benefits." *Id.* at 425. The Ninth Circuit rejected this argument. The court cited Department of Labor regulations which provide three criteria for determining whether an employer has or has not established an employee benefits plan: (1) whether the employer pays premiums for employees; (2) whether participation in the plan is voluntary; and (3) whether the employer's role is "without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer." *Id.* at 426 (quoting 29 C.F.R. § 2510.3–1(j)). The *Silvera* court concluded that the city had established the privately run plan because it had automatically provided it to employees and paid all the premiums. *Id.* Because the City established the plan, the Ninth Circuit found that it was a governmental plan.[7]

The only factor to distinguish this case from *Silvera* is that Illinois apparently offers state employees more than one health plan to choose from. Otherwise, this case is on par with *Silvera:* the state pays employees' premiums, the state is required by statute to provide health coverage for employees, and the state polices the plans that it offers to state employees. By offering multiple plans, Illinois does not simply present "its employees with a smorgasbord of benefit plans offered by different organizations, including [Defendant], and without endorsing any one of those plans, permit[s] its employees to select and pay for the plans of their choice...." *Silvera*, 884 F.2d at 427. In-

stead, the State of Illinois makes several plans available to employees, but still pays the premiums and regulates the plans. Thus, regardless of how many choices the State of Illinois offers its employees, each one falls within the governmental plan exception. *See Garvey v. Rush Prudential HMO, Inc.*, No. 96 C 3791, 1996 WL 648720 at *4 (N.D.Ill. Nov.4, 1996)(holding that a privately run HMO that contracted with Cook County, Illinois to provide benefits to county employees was a governmental plan); *Kaiser Foundation Health Plan, Inc. v. California Professional Firefighters Insurance Trust*, No. C–93–1093–VRW, 1994 WL 90246 at *3 (N.D.Cal. Mar.1, 1994) (citing *Silvera* to conclude that a private insurer supplying coverage to city employees was a governmental plan); *Mutual Benefit Life Insurance Co. v. Benefit Trust Life Insurance Co.*, No. 92–C–2166, 1992 WL 175574 at *2 (N.D.Ill. July 21, 1992) (holding that any plan, including private insurance plans, maintained for city employees is a governmental plan).

One court has also reviewed the legislative history of the governmental policy exclusion and concluded that excluding private insurance plans purchased by governmental entities is consistent with Congress' intent. *Roy v. Teachers Insurance and Annuity Association*, 878 F.2d 47, 49 (2d Cir.1989). In *Roy*, the court stated:

Congress enacted ERISA to curb abuses which were rampant in the private pension system. *See generally* H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 4639 ("House Report "). *See also* 29 U.S.C. § 1001. While ERISA was under consideration, some thought was given toward applying it to public sector employee benefit plans. *See House Report* at 4647. Mindful of the principles of federalism, however, Congress opted to remove such plans from ERISA's scope. The governmental plan exemption embodied in section 1003(b) evinces "Congress' intent to refrain from interfering with the manner in

---

7. The *Silvera* court also noted that a plan falls within ERISA's definition of an employee welfare benefit plan if it is established and maintained by an employer "through the purchase of insurance." 884 F.2d at 426 (citing 29 U.S.C.

§ 1002(1)). Thus, a plan is governed by ERISA even if the employer purchases insurance for its employees even if the employer does not itself carry out any of the day-to-day management tasks related to the plan.

which state and local governments operate employee benefit systems." *Feinstein v. Lewis,* 477 F.Supp. 1256, 1261 (S.D.N.Y. 1979), *aff'd,* 622 F.2d 573 (2d Cir.1980). Likewise, the definition of *"governmental plan"* contained in section 1002(32) was drafted in accordance with Congress' goal of preserving federalism.

. . .

In exempting governmental plans from ERISA, Congress "was concerned more with the governmental nature of public employees and public employers than with the details of how a plan was established or maintained." *Feinstein,* 477 F.Supp. at 1262.

*Roy,* 878 F.2d at 49–50. Given Congress' intent to regulate private sector pension and to avoid extensive regulation of state employees' pensions, it is sensible to conclude that the plan at issue in this case is exempt from ERISA.

Based on the plain language of ERISA, the history and purpose of the statute, and the decisions interpreting the relevant provisions, the Court concludes that the Health Alliance HMO plan under which Plaintiff is covered is a governmental plan. Specifically, the plan, although operated by a private corporation, was provided to Plaintiff by the State of Illinois at no cost through a statutorily mandated program to provide basic health coverage to state employees. Because the Health Alliance HMO is a governmental plan, ERISA does not apply 29 U.S.C. § 1003(b)(1). Thus, this Court has no subject matter jurisdiction.

*Ergo,* Defendant's Motion to Dismiss is ALLOWED. This case is dismissed without prejudice.

CASE CLOSED.