**Joanne L. HUMPHREY, Plaintiff,**

v.

**SISTERS OF ST. FRANCIS HEALTH SERVICES, INC. d/b/a St. Anthony Hospital, Defendant.**

**No. 3:96–CV–97RM.**

United States District Court, N.D. Indiana, South Bend Division.

July 15, 1997.

Michael C. Kendall, Adina Teska, Kendall Law Office, Indianapolis, IN, for plaintiff.

Robert B. Bush, Cindy M. Lott, Susanne M. Spisak, Ice Miller Donadio and Ryan, Indianapolis, IN, for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on the defendant's motion for summary judgment, the plaintiff's motion for leave to file a second amended complaint, and the plaintiff's motion to extend the discovery deadline. For the reasons set forth below, the court addresses the summary judgment motion aimed at Ms. Humphrey's ERISA claim as a motion to dismiss for lack of subject matter jurisdic-

tion, grants the motion to dismiss, grants the summary judgment motion, denies the motion for leave to file a second amended complaint, and denies the motion to extend the discovery deadline.

## I. BACKGROUND [1]

Joanne Humphrey began working for St. Anthony Hospital ("the Hospital") in Michigan City, Indiana, as a full-time cashier in August 1978. In the summer of 1994, Steve Richter, Controller of the Finance Department and Ms. Humphrey's then-supervisor, recommended elimination of Ms. Humphrey's position. Mr. Richter resigned in September 1994, after which Ms. Humphrey's position became part of the Patient Accounting Department and she was supervised by Patricia Giesler, Assistant Vice President over Medical Records, Patient Accounting and Registration. In the fall of 1994, the Hospital needed to make financial cutbacks, and underwent a reduction in force (RIF) that included decreasing the number of employees throughout the Hospital. On October 30, 1994, Ms. Humphrey's cashier position was reduced to part-time, and another full-time employee in the department, Cynthia Evans, was laid off. After October 30, Ms. Humphrey worked 8:00 a.m. to 4:30 p.m. two or three days per week and her hourly rate continued to increase periodically.

Ms. Humphrey's duties changed somewhat when she dropped to part-time. She was given the duty of posting private checks, and several of her other responsibilities were transferred to other employees, including filing, processing returned mail, and posting fees from collection agencies. Ms. Humphrey discussed her reduction in hours with Bill Henning, Director of Human Resources, but did not complain to anyone about the reduction and did not file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), the Indiana Civil Rights Commission, or the Michigan City Human Rights Commission.

In 1995, Chief Executive Officer James Beyers directed the Hospital managers to reduce their budgets by 6%, and Chief Financial Officer Jim Lipinski told Ms. Giesler specifically that she had to reduce the Patient Accounting Department budget by 6%. Mr. Beyers and Mr. Lipinski also emphasized controlling the number of part-time employees at the Hospital. Ms. Giesler could control certain expenses in her department, including office supplies, collection fees and policies affecting collection, and the number of part-time workers, but had no control over others, including the number of patient statements generated and the fees incurred for administration of those statements.

Ms. Giesler recommended to Mr. Beyers and Mr. Lipinski that Ms. Humphrey's position be eliminated. They approved the recommendation, and Ms. Humphrey's position was eliminated effective January 31, 1996, when she was 61 years old. In making her decision, Ms. Giesler considered that others in the department were already performing Ms. Humphrey's duties when she was not there, that Ms. Humphrey would have needed additional training to perform billing and collection functions, and that Ms. Humphrey was the only part-time employee in the department. Other Patient Accounting Department employees, including Pam Storey, assumed Ms. Humphrey's duties.

On January 31, 1996, when Ms. Giesler informed Ms. Humphrey of the elimination of her cashier position, she told her that a part-time registrar position was available in the Emergency Room ("ER"). Ms. Giesler and Dianna Brooks, Admitting and Centralized Scheduling Supervisor, told Ms. Humphrey before she started in the ER that her hours would vary among the shifts, including the 3:00 p.m. to 11:00 p.m. shift and the 11:00 p.m. to 7:00 a.m. shift. Ms. Brooks told Ms. Humphrey she could bid for a position with more consistent hours when it became available. Ms. Humphrey began training in the ER in February on the 3:00 p.m. to 11:00 p.m. shift with Lovel McFadden, and then was placed on the schedule to train on the 11:00 p.m. to 7:00 a.m. shift. The Hospital has one registrar on each of those shifts.

---

1. The following recitation of facts is derived primarily from the defendant's Statement of Material Facts, to which the plaintiff's statement of genuine issues presents no objection or disagreement.

Ms. Humphrey tendered her letter of resignation on February 29, 1996, indicating her intent to retire. Ms. Humphrey indicated in her deposition that she decided to retire because she found working midnights very difficult and because of the changes in the health insurance plan.

Until January 1, 1996, the Hospital's insurance plan allowed those retiring between the ages of 62 and 65 with at least 10 years of service to elect to continue their health insurance coverage through the Hospital until age 65 at the same rates and with the same coverage as an active employee (the Employee Retiree Health Benefit). St. Anthony's has a "defined benefit" pension plan for its employees, meaning that the full cost is paid by the Hospital and employees generally make no contributions to the plan. On December 13, 1995, the Hospital's Administrative Health and Retirement Committee voted to terminate the benefit and replace it with the Continuation of Coverage Benefit, which allowed employees retiring thereafter to elect a temporary extension of health coverage at group rates in certain circumstances under which coverage under the plan would otherwise end.

Ms. Humphrey filed a charge of discrimination with the Michigan City Human Rights Commission on February 9, 1996, alleging that she was being demoted, receiving less pay, and her benefits were in jeopardy because of her age. She filed a second charge of discrimination with the Commission on March 5, 1996, alleging that she was being retaliated against since filing her earlier complaint. Ms. Humphrey filed the complaint in this action on February 7, 1996 alleging that the Hospital interfered with her rights under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* (ERISA). Ms. Humphrey amended her complaint in July 1996 to add a claim that the Hospital discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act.

## II. SUMMARY JUDGMENT MOTION

The Hospital moves for summary judgment on Ms. Humphrey's claims. For the reasons set forth below, the court treats a portion of that motion as a motion to dismiss and finds dismissal of Ms. Humphrey's ERISA claim and summary judgment on her age discrimination and retaliation claims appropriate.

### A. Ms. Humphrey's ERISA Claim

■ The Hospital first argues that the ERISA provision on which Ms. Humphrey relies, 29 U.S.C. § 1140, does not apply to her claims because the Hospital's pension plan is a church plan. Section 1003(b)(2) of Title 29 provides that Title I of ERISA "shall not apply to any employee benefit plan if ... such plan is a church plan (as defined in section 1002(33) of this title) with respect to which no election has been made under 410(d) of Title 26." Section 1002(33) provides in pertinent part:

(33)(A) The term "church plan" means a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26.

(B) The term "church plan" does not include a plan—

(i) which is established and maintained primarily for the benefit of employees (or their beneficiaries) of such church or convention or association of churches who are employed in connection with one or more unrelated trades or businesses (within the meaning of section 513 of Title 26), or

(ii) if less than substantially all of the individuals included in the plan are individuals described in subparagraph (A) or in clause (ii) of subparagraph (C) (or their beneficiaries).

(C) For purposes of this paragraph—

(i) A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retire-

ment benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

(ii) The term employee of a church or a convention or association of churches includes—

(I) a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry, regardless of the source of his compensation;

(II) an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of Title 26 and which is controlled by or associated with a church or a convention or association of churches; and

(III) an individual described in clause (v).

(iii) A church or a convention or association of churches which is exempt from tax under section 501 of Title 26 shall be deemed the employer of any individual included as an employee under clause (ii).

(iv) An organization, whether a civil law corporation or otherwise, is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches.

The Hospital contends that its pension plan is an ERISA-exempt church plan under § 1002(33) for which no election has been made under 26 U.S.C. § 410(d). To support its claim, the Hospital refers the court to the affidavit of Anthony Ferracane and exhibit A to that affidavit: an April 29, 1988 Internal Revenue Service opinion letter that the Hospital's pension plan constitutes a church plan within the meaning of § 414(e) of the Internal Revenue Code.[2] Mr. Ferracane states in his affidavit that the Internal Revenue Service rendered an opinion in an April 29, 1988 letter that the Hospital's pension plan is a church plan within the meaning of § 414(e) of the Internal Revenue Code for which the Hospital has not made an election under § 410(d). A copy of that letter is appended as exhibit A to Mr. Ferracane's affidavit.

Ms. Humphrey contests the Hospital's pension plan's "church plan" status. She asserts that the Hospital's claim that the plan is a church plan rests merely on its tax exempt status, and that the Hospital does not support its claim with specific evidence. Ms. Humphrey argues that questions of fact remain as to whether the Hospital is controlled by a church and whether its retirement benefit plans are established and maintained by a church. She asserts ERISA is construed liberally, and exemptions to its coverage defined narrowly, to further its purposes of preventing deprivations of benefits.

Because the Hospital attacks the court's subject matter jurisdiction over Ms. Humphrey's ERISA claim, that portion of the motion is properly construed as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187–1188 (2d Cir.1996); *Roy v. Teachers Ins. & Annuity Ass'n,* 878 F.2d 47, 47–48 (2d Cir. 1989); *Simac v. Health Alliance Medical Plans, Inc.,* 961 F.Supp. 216, 217–218 (N.D.Ill.1997). In deciding the jurisdictional issue, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir.1993) (*quoting Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979)); *see also Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir.1995). The party attempting to invoke the court's jurisdiction cannot rest on the pleadings, but must present "competent proof" that jurisdiction exists. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–560, 112 S.Ct. 2130, 2135–2136, 119 L.Ed.2d 351 (1992); *NLFC, Inc. v. Devcom Mid-America, Inc.,* 45 F.3d 231, 237 (7th Cir.), *cert. denied,* 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995).

---

**2.** The affidavit and opinion letter are exhibits to the Hospital's motion to dismiss, filed in this court on July 18, 1996.

The court lacks jurisdiction to hear Ms. Humphrey's ERISA claim. Ms. Humphrey challenges the Hospital's evidence as supporting merely the proposition that the Hospital enjoyed tax-exempt status. The Hospital's evidence clearly supports more, however. Mr. Ferracane's (Vice President of Human Resources) affidavit states that the IRS made the determination that the Hospital's pension plan is a church plan under § 414(e) of the Internal Revenue Code and that no election has been made under § 410(d) of the Code, and the IRS's opinion letter is appended to the affidavit. The definition of "church plan" contained in ERISA § 1002(33) is identical to the definition set forth in § 414(e) of the Internal Revenue Code. Contrary to Ms. Humphrey's assertion, this is "specific" evidence of the court's lack of jurisdiction. Ms. Humphrey cannot rest on the pleadings, or general assertions that questions of fact exist. In the face of the evidence the Hospital presents, Ms. Humphrey has not met her burden of establishing this court's jurisdiction to hear her claim, and dismissal of her ERISA claim is appropriate.

### B. Ms. Humphrey's Age Discrimination Claims

The remainder of the arguments in the Hospital's summary judgment motion challenge the merits of Ms. Humphrey's claims and are addressed under the familiar summary judgment standards of Federal Rule of Civil Procedure 56.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) "mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." "Where the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial ... there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file....

In considering whether there are any genuine issues of material fact, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Where a fact is disputed, the nonmoving party must show that the disputed fact is material under the applicable law. The applicable law will dictate which facts are material. Only disputes that could affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

*National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.,* 98 F.3d 262, 264–265 (7th Cir.1996) (citations omitted).

### 1. Claims for Acts Occurring Over 180 Days Before EEOC Charge

■ The Hospital argues that the claims Ms. Humphrey brings for acts of discrimination alleged to have occurred more than 180 days before she filed her charge of discrimination with the EEOC (before February 9, 1996) are time-barred under the ADEA, 29 U.S.C. § 626(d). The Hospital acknowledges that certain equitable doctrines may apply to toll the 180–day filing period set forth in § 626(d), but asserts that the circumstances of this case do not warrant such tolling.

According to the Hospital, Ms. Humphrey cannot claim an inability to obtain vital information bearing on the existence of her claim because she admitted in her deposition (at page 41) that when her hours were reduced to part-time in October 1994 (more than 460 days before she filed her charge of discrimination), she felt she had been discriminated against, and that she neither has alleged nor can prove that the Hospital took any active steps to keep her from suing on time. The Hospital also asserts that any attempt to argue a "continuing violation," which would allow her to bring all her claims as part of a single ongoing program of discrimination, must fail because Ms. Humphrey cannot show a series or continuum of discriminatory or unlawful acts whose character as such was not apparent when committed, though became so when viewed in light of earlier acts, as opposed to a collection of unrelated acts.

Ms. Humphrey asserts that all of the following discriminatory practices occurred 180 days or less before she filed her charge of discrimination with the EEOC: her job was phased out in January 1996, less than two months before her retirement age, the Hospital interfered with her attainment of her full retirement benefits, and younger workers were treated more favorably than she was. Ms. Humphrey believes she should be able to sue for acts occurring before this period as well because the Hospital's actions constitute a continuing violation of the ADEA. To support this claim, she cites *Hamilton v. Komatsu Dresser Indus., Inc.* 964 F.2d 600 (7th Cir.1992), and argues that her evidence clearly shows that the events before and after the 180–day cutoff constitute an overall scheme of discriminatory practices against her. That overall scheme of discrimination, Ms. Humphrey contends, includes her reduction of hours in October 1994, continual harassment by her supervisor,[3] and demotion to the Emergency Room position.

Ms. Humphrey has not shown a genuine issue of material fact regarding the application of the continuing violation theory to make actionable the acts of which she complains that occurred before the 180–day cutoff. The continuing violation theory allows a plaintiff to challenge an activity that occurs outside the limitations window "if it is part of a pattern of discrimination that extended into the limitations period." *Chambers v. American Trans. Air, Inc.*, 17 F.3d 998, 1003 (7th Cir.1994). The doctrine allows relief for a time-barred act upon a showing that the act is linked with an act that occurred during the limitations period. *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 969 (7th Cir.1996). The principle organizing the law on continuous violations

> is that the plaintiff may not base her ... suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations.

*Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir.1996).

Ms. Humphrey asserts that her "evidence clearly shows ... an overall scheme of discriminatory practices" against her, but does not identify what evidence she believes establishes the requisite link, and no such link is obvious to the court. The evidence in the record does not tend to establish any nexus between the circumstances leading to Ms. Humphrey's October 1994 reduction in hours to part-time and the RIF that caused the complete elimination of Ms. Humphrey's position in January 1996. Ms. Humphrey presents nothing that renders unreasonable the expectation that she must have brought suit on the alleged harassment by her supervisor and her demotion to part-time (assuming the two are somehow connected) before the statute ran on those actions. *See Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994) (finding plaintiff had not shown sufficiently close nexus between conduct before and after statutory cutoff).

---

**3.** Ms. Humphrey relies on page 42 of her deposition to support her claim of harassment by her supervisor, in which she states that such harassment began in 1988 or 1989 and consisted of "continual putdown, sarcasm whenever anything was said."

Further, Ms. Humphrey stated in her deposition that she thought her demotion to part-time discriminatory at the time it occurred, and nothing supports a finding that her appreciation of its actionable nature occurred only in the light of later events falling within the statutory period. *Cf. Galloway*, 78 F.3d at 1167 (finding repeated "sick bitch" comment "just the kind of verbal conduct that it would not be reasonable to expect an employee to base suit on the first time it occurred" because "a single, isolated such comment could not reasonably be thought to constitute sexual harassment or to cause a harm sufficiently great to repay the expense of suit"). Having found that the continuing violation theory does not apply to Ms. Humphrey's claims, any relief available is limited to the discriminatory practices she alleges occurred 180 days or less before she filed her charge of discrimination.[4]

## 2. Elimination of Ms. Humphrey's Position

■ The Hospital claims that Ms. Humphrey cannot raise a genuine issue of fact as to whether its proffered reason for eliminating her cashier position in January 1996—the need for each department to reduce expenses (by 6%), including the number of part-time employees—is a pretext for age discrimination. According to the Hospital, Ms. Humphrey held the only part-time position in her department and her duties could be performed by existing employees in her absence (and had been since her reduction in hours in 1994). The Hospital does not assert that Ms.

Humphrey's position was unnecessary, but rather that other employees already performing her functions some of the time could simply absorb them in addition to their own.

Ms. Humphrey notes that she was performing satisfactorily, but her position was eliminated and a younger employee (Ms. Storey) continued to perform her duties in a full-time position. This, she asserts, shows that her position was not eliminated because it was no longer necessary or because the Hospital could not afford to keep someone in the position at full-time hours. Ms. Humphrey also asserts that pressure was put on her, and not other employees, to retire, citing her own deposition as evidence.

The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an individual on the basis of age. 29 U.S.C. § 623(a). An ADEA plaintiff may establish age discrimination by presenting direct or circumstantial evidence that age was a determining factor in the decision at issue or may use the indirect, burden-shifting method of proof for Title VII cases originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted to age discrimination claims under the ADEA. *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994). "In looking for discriminatory motive under the ADEA, the relevant inquiry is whether age 'tipped the balance,' that is, whether age was a 'but for' cause of the decision to fire the plaintiff." *Testerman v. EDS Technical Products Corp.*,

---

4. The Hospital argues that even if Ms. Humphrey's claim that her October 1994 reduction in hours is not time-barred, the Hospital's reason for reducing her hours was legitimate and non-discriminatory and Ms. Humphrey cannot show otherwise. The Hospital asserts that Ms. Humphrey's hours were reduced as part of a hospital-wide RIF that included terminations, reductions in hours, and consolidation of managerial staff positions.

Ms. Humphrey's response brief offers no response to this argument. The court discusses the standards applicable to ADEA cases more fully below, but for now notes that once the Hospital comes forward with a legitimate non-discriminatory basis for the employment decision in question, Ms. Humphrey must present evidence that would allow a reasonable trier of fact to conclude that the reason given is a pretext for age

discrimination. *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 302–303 (7th Cir. 1996). Pretext means a lie or phony reason, and may be established " 'by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence.' " *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir.1996) (quoting *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir.1994)). Mrs. Humphrey, having not responded to this portion of the Hospital's summary judgment motion, has not come forward with evidence that creates a genuine issue regarding the Hospital's proffered legitimate non-discriminatory reason for reducing her hours in October 1994, and summary judgment on that portion of her claims is warranted on that basis as well.

98 F.3d 297, 301 (7th Cir.1996). Although courts must approach summary judgment motions in employment discrimination with caution because they often turn on questions of intent and credibility, the same summary judgment standards apply to employment discrimination cases as apply to all other cases. *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997).

Ms. Humphrey does not present direct evidence that her *age* played a role in the decision to reduce her to part-time, so the court applies the burden-shifting analysis. Under this analysis, the plaintiff must first show a prima facie case of age discrimination, thereby shifting the burden of production to the employer to articulate a legitimate non-discriminatory reason for the decision. Once the employer does so, the plaintiff must come forward with evidence that would allow a reasonable trier of fact to conclude that the reason given is a pretext for age discrimination. *Testerman,* 98 F.3d at 302–303. "A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Rabinovitz,* 89 F.3d at 487 (*quoting Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1145 (7th Cir.1994)); *see also Denisi v. Dominick's Finer Foods Inc.,* 99 F.3d 860, 865 (7th Cir.1996) ("An employee may survive a motion for summary judgment by 'produc[ing] evidence from which a rational factfinder could infer that the company lied about its proffered reasons for his dismissal,' *Courtney v. Biosound, Inc.,* 42 F.3d 414, 424 (7th Cir.1994), or that the company's proffered reasons do not represent the truth, *Collier v. Budd Co.,* 66 F.3d 886, 893 (7th Cir.1995).").

These formulations are simply different ways of recognizing that when the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a factfinder may reasonably infer that unlawful discrimination was the true motivation: "If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one, such as age, may rationally be drawn." In such circumstances, summary judgment is improper.

*Testerman,* 98 F.3d at 303 (*quoting Shager v. Upjohn Co.,* 913 F.2d 398, 401 (7th Cir.1990)). In cases involving RIFs, where the decision to cut some employees has already been made, the plaintiff need not produce evidence tending to prove that no RIF really occurred, but must only show that age "tipped the balance" in favor of the employment decision. *Testerman,* 98 F.3d at 303–304 ("[T]he ADEA 'does not protect merely the older worker who is perfect from the standpoint of his employer.... It protects, as a practical matter, the imperfect older worker from being treated worse than the imperfect younger one.' " *Shager,* 913 F.2d 398, 403 (7th Cir. 1990).).

Applying these principles to this case, the court must determine whether a trier of fact could find that the Hospital's true reason for reducing her hours was the RIF going on at that time, and not whether that decision was a sound business decision. The evidence on which Ms. Humphrey relies does not call into doubt the Hospital's proffered reason for eliminating her cashier position. The Hospital asserts that Ms. Humphrey's position was eliminated because it was the department's only part-time position (and elimination of part-time positions was a suggested method of cutting costs) and other full-time employees had the skills necessary to perform her duties, while she would have required additional training to perform their duties. Ms. Humphrey's assertions that she was performing satisfactorily, that her duties still needed to be performed, and that a younger employee continued to perform her duties simply do not refute the specific reason given for her elimination, and therefore could not support a finding that the reason is a pretext for age discrimination or that Ms. Humphrey's age "tipped the balance" in the decision, causing her to be eliminated instead of others during the Hospital's early 1996 RIF.

Ms. Humphrey likens her case to *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13 (7th Cir.1987), in which the Seventh Circuit explained that evidence of outstanding performance was relevant to proving pretext where the employer's proffered reason for terminat-

ing the plaintiffs' employment relied heavily on alleged performance deficiencies. *Id.* at 19. Unlike the situation in *Graefenhain*, however, the Hospital has never asserted poor performance as a reason for Ms. Humphrey's elimination; Ms. Humphrey's satisfactory, or even exceptional, performance does not specifically refute the reason the Hospital offers.

Ms. Humphrey also relies on her claim that she was "pressured" into retiring. As evidence, she refers the court to page 82 of her deposition, where she states that although nobody at the hospital told her she had to retire, "a lot of pressure" was exerted on her to retire. *See* Humphrey Dep. at 82. Without further elaboration from Ms. Humphrey, her conclusory assertion that she received "pressure" to retire does not provide evidence from which a reasonable trier of fact could conclude that the proffered reason for her elimination is a pretext for discrimination.[5]

For these reasons, the court finds summary judgment on Ms. Humphrey's claim of age discrimination in the elimination of her position is appropriate.

## C. Ms. Humphrey's Retaliation Claim

■ The Hospital urges the court to award summary judgment on Ms. Humphrey's retaliation claim because she cannot establish any causal link between her protected activity—the February 9, 1996 filing of her charge of discrimination with the EEOC-and the scheduling change to the 11:00 p.m. to 7:00 a.m. shift in the ER in March 1996. According to the Hospital, Ms.

Brooks, who rescheduled Ms. Humphrey's hours, did not know that she had filed a charge of discrimination. The Hospital explains that Ms. Humphrey was placed on that shift because the hours of her position varied, that Ms. Humphrey was never promised that she could stay on her original shift indefinitely, that the Hospital has only one ER registrar for each shift, and that Ms. Humphrey admits that at the time the change was made, she had enough training to help and nobody replaced her on the evening shift to help Ms. McFadden.

Ms. Humphrey's response relies exclusively on arguments that she has made a prima facie case of discrimination and then began to receive negative treatment, which she believes provides a sufficient basis to infer that the Hospital was retaliating against her.

Under the ADEA, it is unlawful for an employer to discriminate against an employee because he or she has "opposed any practice made unlawful by [the ADEA]," or he or she has "made a charge, testified, assisted, or participated ... in an investigation, proceeding or hearing" under the ADEA. 29 U.S.C. § 623(d). To establish a prima facie case of retaliation, the plaintiff must show that she engaged in statutorily protected expression, that adverse action was taken against her by her employer, and that a causal link exists between the two. *Rabinovitz,* 89 F.3d at 488. The Hospital asserts that Ms. Brooks made the decision regarding Ms. Humphrey's schedule and did not know at that time of Ms. Humphrey's EEOC charge, and Ms. Humphrey offers no evidence to refute this assertion. Summary judgment on the

---

**5.** Ms. Humphrey does not inform the court what was said or done that leads her to believe that she was being pressured into retiring. From the Hospital's summary judgment motion, we learn that Ms. Humphrey explained the "pressure to resign" as including that requests she made, and not just personal requests, were automatically denied and extra work given at deadline time had to be completed "or else." *See* Humphrey Dep. at 43. The Hospital points out that Ms. Humphrey gave in her deposition one example of discriminatory conduct that she thought was aimed at getting her to resign and two examples of requests that were denied. *See* Humphrey Dep. at 45–46, 48–49 (comment by Ms. Giesler that her Christmas decorations looked "ratty," request for key to business office denied, and

request for additional security at the counter denied). The Hospital also points out that Ms. Humphrey testified during her deposition that Ms. Giesler made sarcastic remarks and harassed others in the department, singling out one person for some period of time and then shifting to another. *See* Humphrey Dep. at 111.

Even had Ms. Humphrey provided the details relating to the "pressure to resign" that the Hospital sets forth in its summary judgment motion, they do not specifically refute the reasons given by the Hospital for the elimination of Ms. Humphrey's position. Nothing is apparent in the alleged harassment that provides a link to Ms. Humphrey's age, and Ms. Humphrey herself stated that Ms. Giesler "harassed" others in the department.

retaliation claim is appropriate because Ms. Humphrey cannot raise a genuine issue regarding Ms. Brooks's retaliatory motive if she has not raised a genuine issue regarding her knowledge of the protected expression and summary judgment is appropriate. *See Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir.1994); *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1370 (7th Cir. 1993); *Damato v. Jack Phelan Chevrolet Geo, Inc.*, 927 F.Supp. 283, 288 (N.D.Ill.1996).

### III. MOTION FOR LEAVE TO AMEND AND MOTION TO EXTEND DISCOVERY DEADLINE

Ms. Humphrey moves for leave to file a second amended complaint to include state-law breach of contract claims. The Hospital predicted such a motion, and its summary judgment motion already addresses such claims. The Hospital objects to the granting of leave to amend at this late stage of the litigation. Having granted summary judgment with respect to Ms. Humphrey's ERISA and ADEA claims, the majority of the proposed second amended complaint is futile and no independent basis appears for this court's jurisdiction over the state breach of contract claims. In light of the foregoing, Ms. Humphrey's motion for leave to conduct additional discovery is denied as moot. Ms. Humphrey may file any motion to reconsider asserting an independent jurisdictional basis within 15 days of this order.

### IV. CONCLUSION

For the reasons set forth above, the court CONSTRUES the portion of the defendant's summary judgment motion asserting that the Hospital's pension plan is an ERISA-exempt as a motion to dismiss for lack of subject matter jurisdiction, GRANTS the motion to dismiss for lack of subject matter jurisdiction, GRANTS the defendant's summary judgment motion (filed Feb. 14, 1997(# 48)), DENIES the plaintiff's motion for leave to file second amended complaint (filed May 1, 1997(# 76)), DENIES AS MOOT the plaintiff's motion for to extend time to complete discovery (filed July 1, 1997(# 80)), and VACATES the **September 10, 1997** final pretrial conference and the **September 15, 1997** trial

set in this cause. The court STAYS entry of judgment in this matter for **15 days**, and will thereafter direct the clerk to enter judgment if the plaintiff does not file a motion to reconsider her motion to file a second amended complaint setting forth a jurisdictional basis for that claim.

SO ORDERED.