Steven KRUPP, et al.

v.

LINCOLN UNIVERSITY, et al.

v.

The TRAVELERS INSURANCE
COMPANIES.

Civ. A. No. 85–1724.

United States District Court,
E.D. Pennsylvania.

April 10, 1987.

Joseph W. Marshall, III, Goldman, Koplin & Marshall, P.C., Philadelphia, Pa., for plaintiffs.

Joseph F. Moore, Jr., John E. Quinn, Reed, Smith, Shaw & McClay, Philadelphia, Pa., for Lincoln University, et al.

Robert M. Landis, Kathleen Milsark, William R. Herman, Philadelphia, Pa., for Travelers Ins. Co.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

In this action, Steven and Deborah Krupp and their daughter Joanna Krupp have sued Lincoln University for terminating Joanna Krupp's coverage under Lincoln's self-insured group health plan, in which her father is enrolled as an employee of Lincoln. Lincoln terminated Joanna's coverage when it determined that she was ineligible because she had been disabled from birth. Denying any liability to the Krupps, Lincoln has filed a third-party complaint against the Travelers Insurance Companies and Massachusetts Mutual Life Insurance Company, the two insurance carriers that contracted with Lincoln consecutively to provide group health coverage for Lincoln's employees before Lincoln converted to self-insurance. Lincoln claims that, if it is found liable to the Krupps, responsibility for the continuing payment of Joanna's medical bills should be shouldered by these insurance companies, whose alleged errors in applying the terms of their insurance contracts led to the initial payment of benefits to Joanna. Lincoln's claim against Massachusetts Mutual was subsequently dismissed, but the claim against Travelers remains alive.

Before the court are two motions to dismiss: Lincoln has filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, in which Travelers has joined, and Travelers has filed a separate motion to dismiss the third-party complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). For the reasons stated below, both motions will be denied.

### I. *Lincoln's Motion to Dismiss for Lack of Jurisdiction*

Plaintiffs are suing Lincoln for violation of the Employee Retirement Income Security Act of 1974 ("ERISA" or "the Act"), 29 U.S.C. §§ 1001 *et seq.* and the terms of the collective bargaining agreement between Lincoln and the Lincoln University Chapter of the American Association of University Professors ("LUC–AAUP"). Plaintiffs predicate federal question jurisdiction, pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), on its ERISA claim and allege pendent jurisdiction over the contract claims presented in Count II of its complaint. Defendant Lincoln's motion to dismiss argues that the federal courts lack subject matter jurisdiction over plaintiffs' claim because ERISA is inapplicable to Lincoln's health care plan which, Lincoln contends, is a "governmental plan" as defined by the Act. Conceding that ERISA exempts governmental plans from the Act's provisions, 29 U.S.C. § 1003(b), plaintiffs dispute Lincoln's conclusion that the plan in question is a governmental plan within the meaning of the Act.

■ Plaintiffs also suggest that it is somehow relevant that, up until the time plaintiffs' action was filed, Lincoln believed and represented that its plan was covered by ERISA. Because the opportunity to challenge subject matter jurisdiction can never be waived by a party's actions or representations, *see Insurance Corporation of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982), this court will only consider defendant's current position on the applicability of ERISA.

ERISA states that the provisions in question here "shall not apply to any employee benefit plan if ... such a plan is a governmental plan (as defined in section 1002(32)

of this title)." 29 U.S.C. § 1003(b). The Act defines governmental plans as those plans

established or maintained for it employees by the Government of the United States, by the governments of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.

29 U.S.C. § 1002(32). The Lincoln University Commonwealth Act ("The Commonwealth Act"), 24 P.S. § 2510–401 *et seq.*, provides in pertinent part:

[I]t is hereby declared to be the purpose of this act to extend Commonwealth opportunities for higher education by establishing Lincoln University as an instrumentality of the Commonwealth to serve as a State-related institution in the Commonwealth system of higher education.

24 P.S. § 2510–402(7).

Defendant points to the language of the Commonwealth Act and the language of ERISA to argue that the two acts, read together, exempt Lincoln from the terms of ERISA. Defendant's strongest argument is based on this coincidence of language, but the fact that the term "instrumentality" of the government appears in both statutes does not mean that the word is given the same meaning in both. Indeed, the context in which the word appears in the statutes and subsequent court interpretations of the statutes suggest that "instrumentality," a word broadly defined when divorced from a context, means two different things in the Commonwealth Act and in ERISA.

The Pennsylvania Legislature enacted the Commonwealth Act to allow Pennsylvania to provide greater financial support to Lincoln University than it could under prior law. While Lincoln's status under this Act has not yet been considered by the Pennsylvania courts, a nearly identical statute, the Temple University Commonwealth Act, 24 P.S. § 2510–2, has been interpreted by both the Pennsylvania Supreme Court and the Third Circuit. In *Mooney v. Board of Trustees of Temple University of the Commonwealth System of Higher Education*, 448 Pa. 424, 292 A.2d 395 (1972), the Pennsylvania Supreme Court determined, after a lengthy consideration of each provision of the Temple Commonwealth Act, that that Act had not transformed Temple into a state agency subject to Pennsylvania's Right to Know Act, 65 P.S. § 66.1 *et seq.* The court concluded that the language of the Act stating that Temple "shall continue as a corporation for the same purposes as, and with all rights and privileges heretofore granted to Temple University," 24 P.S. § 2510–3,

reveals an express legislative intent to preserve Temple's status as a non-profit corporation chartered for educational purposes. The receipt by Temple of increased state financial aid no more transforms Temple into a state "agency" than the receipt of federal funds can make Temple an agency of the federal government. A review of the Temple University-Commonwealth Act further supports our conclusion.

292 A.2d at 399.

The Third Circuit, referring to *Mooney* as "an authoritative interpretation of the pertinent state statute," reached a similar conclusion in determining that Temple was not a "political subdivision" within the meaning of § 103(a)(1) of the Internal Revenue Code, 26 U.S.C. § 103(a)(1), and hence that a bank was not exempt from federal income taxation on interest paid by Temple to the bank on moneys borrowed by the university. *Philadelphia National Bank v. United States*, 666 F.2d 834, 839 (3d Cir.1981). After reviewing Temple's organizational and administrative structure, the Third Circuit concluded that "the method utilized by the legislature to establish a state relationship with Temple is unique and the resulting body is not the same as a traditional authority or political subdivision." *Id.* at 838.

The Lincoln University-Commonwealth Act, like the Temple Act, provides that Lincoln "shall continue as a corporation for the same purposes as, and with all rights and privileges heretofore granted to Lincoln University." 24 P.S. § 2510–403. It could be argued that both *Mooney* and *Philadelphia National Bank* are easier

cases than the case before this court because they interpreted statutes that drew the line at "state agencies" or "political subdivisions," both terms that more precisely differentiate between the public and private spheres than does the term "instrumentality." In addition, the fact that ERISA includes all three terms suggests that each term may mean something different. Although *Mooney* and *Philadelphia National Bank* provide this court with a great deal of guidance, they do not squarely address the precise issue raised in Lincoln's motion to dismiss.

While this court has discovered no statutory language, legislative history or cases providing specific guidance in interpreting the term "instrumentality" in ERISA, there are generalized indications that Congress contemplated a fairly narrow exception to ERISA for plans "established by state and local governments" to cover "municipal and state employees." *Feinstein v. Lewis*, 477 F.Supp. 1256, 1261 (S.D.N.Y.1979), *aff'd.* 662 F.2d 573 (2d Cir. 1980). Nothing in the legislative history suggests that Congress intended "instrumentality" to broaden the reach of the "governmental plan" exception. Indeed, the legislative history's frequent reference to the exception simply as the "governmental plan" exception, *see, e.g.,* H.R.Rep. No. 807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4674, 4684, 4713, 4830; S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin.News, 4639, 4965, without ever elaborating on the significance of the individual terms chosen to describe the scope of the exception, suggests that the exception was meant to cover the entire range of organizations traditionally characterized as governmental organizations, but not to expand the range to include organizations having some significant relationship with a government but not themselves viewed as governmental.

The Supreme Court of Pennsylvania's interpretation of Temple's near-identical act makes clear that Lincoln, characterized as a "state-related institution," cannot be recharacterized as a governmental or public institution. The court's declaration in *Mooney* that Temple's status did not change when its Commonwealth Act was enacted applies equally well to Lincoln. As a "non-profit corporation chartered for educational purposes," Lincoln remains outside the reach of ERISA's governmental plan exception. Lincoln's motion to dismiss will therefore be denied.

## II. *Travelers' Motion to Dismiss the Third-Party Complaint*

Lincoln has filed a third-party complaint against Travelers and Massachusetts Mutual, seeking contribution for all sums awarded in favor of the Krupps in the original action against Lincoln. Lincoln contends that any continuing obligation it is found to owe the Krupps for Joanna Krupp's medical care was created by the insurance carriers' misapplication of the terms of the group health policy they had agreed to provide Lincoln's LUC–AAUP employees in the years before Lincoln was self-insured. On October 30, 1986, a stipulation and order was entered dismissing Massachusetts Mutual from the third-party action.

In its motion to dismiss, Travelers argues that Lincoln's third-party complaint fails to state a claim upon which relief can be granted. F.R.C.P. 12(b)(6). Travelers contends that, whether or not the payments it made to Joanna Krupp were made in error, "the fact that payments were made does not impose upon ... Travelers any duty owed to Lincoln which would serve as the basis for liability." Memorandum of Law in Support of Travelers' Motion at 1–2. Travelers further states that "[w]e have found no support for the proposition that after a contract of insurance comes to an end in accordance with its terms, an insurer has some contingent duty to subsequent insurers such as Lincoln arising out of claims paid during the coverage period." *Id.* at 4.

In considering a motion to dismiss under Rule 12(b)(6) a court is to presume all facts alleged in the complaint to be true, and should not dismiss the complaint for failure to state a claim "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Miree v. De-Kalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

■ Although Lincoln asserts claims against Travelers for both negligence and breach of contract, both claims appear to be derived from Travelers alleged breach of the insurance contract. As the representative who negotiated the insurance contract for the benefit of all employees covered by the plan, Lincoln can properly assert a claim for breach of contract. *See Layman v. Continental Assurance Co.,* 416 Pa. 155, 205 A.2d 93, 96 (1964) ("in group insurance the master contract or policy is between the insurance company and the employer—the latter being the holder of the policy"). Lincoln's complaint is based on Travelers alleged failure to follow the terms of the group insurance policy which deny eligibility to individuals, like Joanna Krupp, who have been disabled from birth.

Lincoln's breach of contract claim is an unusual one, because the alleged breach resulted in the *overpayment* of benefits to one of Lincoln's employees, at no apparent direct expense, under the terms of the policy, to Lincoln. Under ordinary circumstances, Travelers' alleged breach would have hurt only Travelers, and Lincoln would not have felt aggrieved by the error. Under the circumstances presented in this case, however, the alleged misapplication of the terms of the policy is linked, at least indirectly, to Krupp's claim for damages against Lincoln.

Lincoln contends that any obligation a judgment may impose on Lincoln to continue paying Joanna Krupp's medical bills was created by the insurance carriers' failure properly to apply the eligibility standards as provided in the policy. When Lincoln switched to self-insurance, it negotiated a contract with its employees that promised to provide the same coverage, with certain exceptions irrelevant to the issue presently before the court, that was then being provided by the insurance companies. Steven Krupp allegedly agreed to the terms of the new self-insurance group health policy with the understanding that his daughter would continue to be covered. When Lincoln terminated Joanna's coverage, the Krupps filed the original action in this case. Lincoln argues that, if it is found liable to Joanna for continuing health coverage in the original action, that liability stems from Travelers' breach. Relying on Travelers' agreement to fulfill the terms of the insurance contract as drafted, Lincoln promised to continue providing what the insurance companies had provided. Lincoln's claim is not that Travelers owes "some contingent duty to subsequent insurers ... after a contract of insurance comes to an end," but that, while Travelers' contract was still in effect, Travelers violated its terms, to Lincoln's subsequent detriment.

■ To recover on a claim for breach of contract, a plaintiff must show, not only that the breach occurred, but also that the damage for which compensation is sought was foreseeable by the alleged breacher. *See Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507 (1986). The Second Restatement of Contracts explains the requirement that damages be foreseeable as follows:

§ 351. Unforeseeability and Related Limitations on Damages

(1) Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.

(2) Loss may be foreseeable as a probable result of a breach because it follows from the breach

(a) in the ordinary course of events, or

(b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.

....

*comment c. Litigation or settlement caused by breach.* Sometimes a breach of contract results in claims by third persons against the injured party. The party in breach is liable for the amount of any judgment against the injured party ... if the party in breach had reason to foresee such expenditures as the prob-

able result of his breach at the time he made the contract.

Restatement (Second) of Contracts at 135, 138.

In the case before this court, Lincoln's allegation that Travelers violated the terms of the insurance contract by making payments to someone who was ineligible for the coverage states a claim for breach. Lincoln further asserts that any liability to the Krupps to which it may have exposed itself is a result of this breach, because it relied on Travelers' proper performance of the contract when it agreed to provide identical coverage through self-insurance. Such damages cannot be characterized as following in the ordinary course of events from Travelers' breach. Nevertheless, Lincoln may be able to establish that the loss followed from special circumstances about which Travelers had reason to know. While a jury or the court might find that the damage caused by the alleged breach was not foreseeable by Travelers, the foreseeability-of-damages issue cannot be determined in the absence of an evidentiary record. It is therefore not an appropriate determination to make on a motion to dismiss for failure to state a claim. Accordingly, third-party defendant Travelers' Motion to Dismiss shall be denied.

An appropriate order follows.