Mary G. **KIRKPATRICK**, Esq., Legal Guardian for Jane Doe I, and Mary Kehoe, Esq., Legal Guardian for Jane Doe II, Plaintiffs,

v.

**MERIT BEHAVIORAL CARE CORPORATION** dba Merit Behavioral Care Systems Corporation, Defendant.

No. 2:97–CV–203.

United States District Court,
D. Vermont.

Aug. 19, 1999.

Robert E. Manchester, Manchester Law Offices, P.C., Burlington, VT, Bryant Welch, Bryant L. Welch, J.D., Ph.D. & Associates, Potomac, MD, for Plaintiffs.

Robert E. Manchester, (See above), Bryant Welch, for Mary Kehoe, Legal Guardian for Jane Doe II nfr Jane Doe, II, plaintiff.

Peter B. Joslin, Jeffry W. White, Theriault & Joslin, Montpelier, VT, Jeffrey J. Bouslog, Oppenheimer, Wolff & Donnelly LLP, St. Paul, MN, for Defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

This is a lawsuit brought on behalf of two adolescent women suffering from psychiatric illnesses who allege that Merit Behavioral Care Corporation ("Merit"), a managed care company, denied them necessary mental health treatment, causing each of them to suffer severe deterioration in their conditions culminating in near fatal suicide attempts. In its answer Merit asserts as an affirmative defense that the Plaintiffs' state law claims for relief are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq.* The parties have cross-moved for summary judgment. For the reasons that follow, the Court holds that the health insurance benefit plans at issue are governmental plans within the meaning of 29 U.S.C. § 1003(b)(1), and are therefore not subject to ERISA.

## I. *Factual Background*

In 1995, Jane Doe I was a covered dependent of a plan participant under a health care plan known as "The State of Vermont Employee Benefit Plan" ("State Plan"). Jane Doe II was a covered dependent of a plan participant under the Vermont Education Health Initiative's Health Program ("Schools Plan"). Both plans are employee welfare benefit plans within the meaning of ERISA.[1]

### A. *The State Plan*

Jane Doe I was covered under a plan of medical care benefits for eligible employees of the State of Vermont and their eligible dependents. Plan Doc., p. 4 (paper 1, att. 1).[2] Employees of four organizations closely associated with state gov-

---

1. ERISA defines an employee welfare benefit plan as "any plan, fund or program which ... is ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits ..." 29 U.S.C. § 1002(1).

2. Employees eligible for plan participation are defined in Section 631 of Title 3 of Vermont Statutes Annotated:

Any class or classes of elected or appointed officials, but is [sic] shall not include members of the general assembly as such, nor shall it include any person rendering service on a retainer or fee basis, members of boards or commissions, or persons other than employees of the Vermont historical society, Vermont state employees credit union, Vermont state employees association, the Vermont council on the arts and the Vermont state housing authority, whose compensation for service is not paid from

ernment: the Vermont State Employees' Association, Inc., the Vermont State Employees' Credit Union, the Vermont Historical Society, and the Vermont Council on the Arts, are also eligible for inclusion in the State Plan. Plan Doc., p. 6.

The State Plan was established prior to 1951 pursuant to Vt.Stat.Ann. tit. 3, § 631 (1995 and Supp.1998). Section 631(a)(1) provides that the secretary of administration may contract on behalf of the state with any insurance company or nonprofit association doing business in the state to provide insurance to these employees. The State of Vermont funds the benefits payable, charging covered state employees 20% of the premium, and charging the other employer groups 100% of the premiums for their covered employees. Callaghan Non–Party Discovery Response (paper 24, ex. A). Until 1973 the plan provided medical benefits for state employees and their eligible dependents only. In 1973 the Vermont Historical Society was granted permission by statute to participate in the plan. Callaghan letter dated August 3, 1998 (paper 54, ex. 1). Permission was granted in 1977 to the Vermont State Employees Credit Union and the Vermont State Employees Association, and in 1979 to the Vermont Council on the Arts. *Id.* In 1995 approximately one percent of the employees covered by the State Plan were employed by these four outside groups. Willard Dep.Ex. 98 (paper 54, ex. 2).

In 1991, the State of Vermont contracted with American Biodyne Inc. ("Biodyne") to provide covered members of the State Plan with managed mental health/substance abuse services. Biodyne is a wholly-owned subsidiary of Merit.

### B.  *The Schools Plan*

In 1978, the Vermont School Boards Insurance Trust, Inc. ("VSBIT") was organized as a non-profit corporation to provide various forms of insurance for members of the Vermont School Boards Association, Inc. ("VSBA") and their employees. VSBIT was formed pursuant to Vt.Stat.Ann. tit. 24, § 4941–4947 (1992 and Supp.1998). The VSBA's membership consists of school districts and other tax supported educational organizations in Vermont. In 1993 VSBIT and the Vermont National Education Association ("VNEA"), a teachers' union, formed the Vermont Education Health Initiative ("VEHI") to manage the health insurance program initiated by VSBIT. In 1996 VEHI became a separate corporation.

According to VEHI's articles of association, its purpose is "to contract for and provide ... [health] insurance coverage and benefits ... exclusively to individuals (and their dependents) employed by, affiliated with or members of municipal school districts or municipalities created and existing under Vermont law, including those defined under Title 24, Vermont Statutes Annotated, § 4941." (paper 24, ex. H). Municipality is defined by Section 4941 to include all supervisory unions, all incorporated school districts, all entities providing educational services and eligible for state aid, and all their instrumentalities and agencies. Vt.Stat.Ann. tit. 24, § 4941(2)(E), (F), (G), (P) (1992).

More than 300 employers participate in the plans offered by VEHI; most of those employers are the public school districts of Vermont. There are approximately 15,000 individuals covered by these plans. There are four school-related organizations whose employees are also covered under the school plan: VSBIT itself, the VSBA, the Vermont Principals Association and the Vermont Superintendents Association. These organizations add nine individuals to the total. Several private nonprofit schools also participate in the plan, adding some 700 covered individuals. Five of these schools serve as the public schools

the state treasury, nor shall it include any elected or appointed official unless he is actively engaged in and devoting substan-

tially full time to the conduct of the business of his public office.... Vt.Stat.Ann. tit. 3, § 631(a)(2).

for their districts; the rest have also been deemed by VSBIT to be eligible to participate in the Schools Plan because of their receipt of state aid. Employees from five religious schools are covered under the Schools Plan, as are the employees of the VNEA. Merit estimates that in 1995 approximately 7.6 per cent of the Schools Plan subscribers were enrolled through non-governmental employers. Def. Merit's Second Supp.Mem. in Support of Def.'s Mot. for Summ.J. at 2 (paper 56). The Plaintiffs submit that the number is considerably lower, because several employers were not participating in the Schools Plan at the time in question, and because a substantial number of the non public school employers provide public education services. Pls.' Mem. in Opp. to Def. Merit's Second Supp.Memo. in Support of Def.'s Mot. for Summ.J. at 10 (paper 62). The record does not reflect when the non public school employers began participating in the Schools Plan.

In 1984 VSBIT began offering health insurance using Blue Cross Blue Shield of Vermont ("Blue Cross"). The participating school districts send their premiums to the trust, which reimburses Blue Cross for the claims paid on behalf of the schools. At the end of each contract period, any leftover premiums are returned to the participating school districts.

Jane Doe II was covered under the Vermont Health Partnership, one of several insurance plans offered by VEHI and administered by Blue Cross. Blue Cross contracted with Merit to manage the mental health benefit component of the Vermont Health Partnership plan.

II. *Discussion*

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute over a material fact exists when the evidence requires a fact finder to resolve the parties' differing versions of the truth at trial. *Id.* at 249, 106 S.Ct. 2505 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548, but once a motion for summary judgment is properly made and supported, the adverse party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, but the movant's burden may be discharged by showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

ERISA was enacted for the protection of private employee benefit rights. *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 913 (2d Cir.1987); *Feinstein v. Lewis*, 477 F.Supp. 1256, 1259 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 573 (2d Cir.1980); 29 U.S.C. § 1001 (1999). Title I of ERISA sets forth various requirements for covered plans, which, barring some specific exceptions, "apply to any employee benefit plan if it is established or maintained ... by any employer ... or ... by any employee organization ... or ... by both." 29 U.S.C. § 1003(a). Title I of ERISA specifically does "not apply to any employee benefit plan if ... such plan is a governmental plan," however. 29 U.S.C. § 1003(b). "Governmental plan" is defined, for purposes of this exclusion, as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or

political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32).

■ Congress excepted governmental plans from ERISA in accordance with principles of federalism, making clear that it would not "interfer[e] with 'the manner in which state and local governments operate employee benefit systems.'" *Roy v. Teachers Ins. and Annuity Ass'n,* 878 F.2d 47, 49 (2d Cir.1989) (quoting *Feinstein,* 477 F.Supp. at 1261). A plan "'is a governmental plan if it is *either* established or maintained by a government body for its employees.'" *Roy,* 878 F.2d at 50 (quoting *Feinstein,* 477 F.Supp. at 1260 (emphasis in original)).

■ There is essentially no dispute that the State Plan was established by a government body for its employees. For the first twenty years of the State Plan's existence there were no nongovernmental employers participating in the plan. The fact that there are currently a small number of nongovernmental employees permitted by statute to obtain coverage under the plan does not change the fact that the State of Vermont established this plan, and it established it for its employees. Because the governmental entity's status has not changed, the plan is exempt from ERISA as a governmental plan. It is thus unnecessary to address the question of whether in order to meet the governmental plan exception the plan must be currently maintained by the state for its employees alone.

■ The question of whether a governmental entity established the Schools Plan is somewhat more complex. VSBIT was created in accordance with enabling legislation to provide and administer employee benefit plans to the employees of members of the VSBA, all school districts or other tax-supported educational institutions.

The issue is not whether VSBIT, or the current nonprofit corporation administering the plans, VEHI, is a governmental entity. VSBIT and VEHI were and are the entities set up to offer and administer the plans, and their activities can be attributed to the employers for whom they act. *See* 29 U.S.C. § 1002(5) ("employer" means person, group or association acting for employer in relation to employee benefit plan).[3] The question is whether state or local government or its agency or instrumentality was responsible for establishing the Schools Plan, and, if so, whether the program was established for its employees.

Merit has cited *Krupp v. Lincoln Univ.,* 663 F.Supp. 289 (E.D.Pa.1987) as support for its argument that the Schools Plan was neither established nor maintained by a governmental entity. In *Krupp,* the enactment of a statute which characterized a private university as "state-related" did not transform its health plan into a governmental plan for purposes of the ERISA exception. The district court reasoned that the exception for governmental or public institutions was not intended to "include organizations having some significant relationship with a government but not themselves viewed as governmental." *Id.* The statute at issue in *Krupp* was enacted to increase the availability of state funds to what was essentially a private institution.

By contrast, school districts and other state aid supported entities providing educational services in Vermont have been explicitly defined by statute as municipalities, for purposes of providing insurance. Vt.Stat.Ann. tit. 24, § 4941(2)(E), (F), (G) (1992). The state views these entities as governmental. If these entities form an association such as VSBIT to develop and administer programs of insurance, the ac-

---

**3.** Nor does the VNEA's involvement in forming VEHI remove the Schools Plan from the governmental plan exception. *See Lovelace v. Prudential Ins. Co.,* 775 F.Supp. 228, 229 (S.D.Ohio 1991) (plan established by government employer through collective bargaining meets governmental plan exception); *Feinstein,* 477 F.Supp. at 1260 (plan jointly administered by union and school districts through board of trustees was funded by school districts, thus maintained by governmental employers).

tivity of the association is considered an essential governmental function. Vt.Stat. Ann. tit. 24, § 4946 (1992).

The decision in *Livolsi v. City of New Castle,* 501 F.Supp. 1146 (W.D.Pa.1980), also cited by Merit, is also distinguishable from the situation at issue here. *Livolsi* also involved a multi employer welfare benefit fund. In a suit brought by the trustees of the fund, the defendants city and city sanitation authority, both participating employers, challenged federal subject matter jurisdiction. The employee organizations involved in the fund represented some 11,000 employees, the vast majority of which were employed in the private sector. The district court concluded that "when a state or local government body chooses a private welfare benefit plan for its employees, it will subject itself to federal jurisdiction under ERISA." *Id.* at 1150. There was no hint in the *Livolsi* case, however, that the local governmental authorities had been involved in any way in establishing the fund.

The Plaintiffs have presented uncontradicted evidence in the form of the statutory enabling legislation and the deposition testimony of Joseph Zimmerman that the Schools Plan was established by local governmental entities for their employees. Although the parties have extensively debated the amount and significance of participation by non public school employers in the Schools Plan, this debate goes to the issue of whether the plan is currently or was at the time of this lawsuit maintained by local government for its employees. Moreover, given the small number of nongovernmental employees involved, the governmental plan exception's purpose is not violated and its scope is not unduly broadened by placing the Schools Plan within the exception.

Merit has not sustained its burden of showing a genuine issue for trial on the question of whether the Schools Plan was established by governmental entities for their employees. Fed.R.Civ.P. 56(e) (if motion for summary judgment properly made and supported, nonmovant must set forth specific facts demonstrating need for trial on issue). Accordingly, Merit's Motion to Renew Defendant's Motion for Summary Judgment—ERISA (paper 59) is GRANTED; Plaintiffs' Renewed Motion for Partial Summary Judgment (paper 60) is GRANTED; Merit's Motion for Summary Judgment (paper 22) is DENIED.