883 A.2d 429

**Robert John SCALICE, Appellant**

v.

**PENNSYLVANIA EMPLOYEES BENEFIT TRUST FUND, Appellee.**

Supreme Court of Pennsylvania.

Argued March 7, 2005.

Decided Sept. 28, 2005.

162

James D. Belliveau, Pittsburgh, for Robert John Scalice, appellant.

Richard Kirschner, for Pennsylvania Employees Benefit Trust Fund (PEBTF), appellee.

Before: CAPPY, C.J., NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Chief Justice CAPPY.

This appeal raises a question under the Employee Retirement Income Security Act of 1974 ("ERISA" or "Act"), 29 U.S.C. § 1001 *et seq.* Specifically, we consider whether the Superior Court correctly affirmed the trial court's order granting summary judgment to Appellee Pennsylvania Employees Benefit Trust Fund ("PEBTF") on a counterclaim for subrogation. The grant of summary judgment was premised on the threshold determination that PEBTF was not a governmental plan excluded from the Act's coverage on October 30, 1997, *see* 29 U.S.C. §§ 1002(32), 1003(b)(1), but rather, was an ERISA plan that could claim ERISA's preemption of the anti-subrogation provision in the Pennsylvania Motor Vehicle Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1720. Because we conclude that PEBTF was not entitled to summary judgment, we hold that the Superior Court erred. Accordingly, we reverse the Superior Court's order and remand to the trial court for further proceedings.

The relevant facts and procedural history are as follows. Appellant Robert Scalice was an employee of the Commonwealth of Pennsylvania, and as such, received health care benefits from PEBTF. On October 30, 1997, Appellant was injured in a motor vehicle accident, and was treated for the injuries he sustained. PEBTF paid a number of Appellant's medical and hospital bills, some in 1997, and others in 1998. In connection with the accident, Appellant pursued an allegedly negligent third party, and secured a settlement of $100,000. PEBTF made a subrogation claim against the settlement for

$43,795.96. Appellant refused the claim on the grounds that under the MVFRL, 75 Pa.C.S. § 1720, PEBTF did not have a right of subrogation.[1]

Appellant commenced a federal action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, requesting a determination that the MVFRL barred PEBTF from seeking subrogation. PEBTF filed a motion to dismiss, raising subject matter jurisdiction. Appellant responded that jurisdiction was based on the federal question that PEBTF would raise in the case by asserting a preemption defense under ERISA to the MVFRL's prohibition against subrogation.[2] The district court ruled that Appellant's expectation that PEBTF would assert ERISA preemption did not provide the court with subject matter jurisdiction, and thus, granted PEBTF's motion to dismiss. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–4, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

On March 1, 2000, Appellant commenced the present action by filing a Complaint for Declaratory Judgment ("Complaint") in the court of common pleas. In his Complaint, Appellant alleged that PEBTF was exempted from ERISA, having been created as a governmental plan under 29 U.S.C. § 1002(32), and that therefore, PEBTF could not assert ERISA's preemption of the MVFRL.[3] Appellant asked the court to declare

---

1. The MVFRL provides:

   § 1720. Subrogation

   In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits). 75 Pa.C.S. § 1720.

2. In *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the United States Supreme Court held that ERISA preempted the application of § 1720 of the MVFRL to a self-funded health care plan that was an employee welfare benefit plan within the meaning of ERISA under 29 U.S.C. § 1002(1). *Id.* at 65, 111 S.Ct. 403.

3. ERISA provides that "[t]he provisions of this subchapter shall not apply to any employee benefit plan if—(1) such plan is a governmental

whether PEBTF was a governmental plan and whether it had a right to subrogation; to enter a judgment barring PEBTF from subrogation under the MVFRL; and to award him the appropriate counsel fees, costs, and interest. In its Answer to the Complaint and New Matter, PEBTF alleged that at all relevant times, it was an ERISA plan, and that as such, it had the benefit of ERISA preemption and the right to pursue Appellant for subrogation. In a Counterclaim, PEBTF requested that a judgment for $43,795.96 be entered in its favor.

On August 22, 2002, PEBTF filed a Motion for Summary Judgment And/Or Judgment On The Pleadings ("Motion for Summary Judgment" or "Motion").[4] PEBTF's legal argument was as follows. When established in 1988, PEBTF was a governmental plan within the meaning of ERISA and excluded from the Act's coverage. From March 1994 until January 1, 1998, however, PEBTF became an ERISA plan due to private employer participation. Because PEBTF was an ERISA plan at the time of Appellant's accident on October 30, 1997, the MVFRL, and more specifically, its anti-subrogation provision, was preempted. Therefore, PEBTF was able to pursue its right to subrogation against Appellant, which arose out of a provision that the trustees who administer PEBTF adopted in 1995.

As evidence of the undisputed material facts on which its legal argument was premised, PEBTF pointed to the allegation of jurisdiction in Appellant's federal complaint and to three exhibits attached to the Motion. Exhibit A consisted of two "Affidavits" of Tommy Teague, the Executive Director of PEBTF ("Teague Exhibit"); Exhibit B was the "Affidavit" of William Schantzenbach, the Chief Financial Officer of PEBTF

plan (as defined in section 1002(32) of this title)[,]" and defines "governmental plan" to mean "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing...." 29 U.S.C. §§ 1002(32), 1003(b)(1).

4. PEBTF's Motion was not based solely on the pleadings and documents properly attached thereto. Therefore, it was not a motion for judgment on the pleadings under Pa.R.C.P. 1034, and was not treated as such.

("Schantzenbach Exhibit"); and Exhibit C was a letter to the Fund's attorney from Robert E. Ribic, Jr., the Director of Litigation Support for the Certified Public Accounting Firm of Brown, Schultz, Sheridan Fritz ("Ribic Exhibit").[5]

The Teague Exhibit stated: that PEBTF is a health and welfare trust fund that is administered by trustees who are appointed by the Governor and certain unions; that PEBTF receives its funding from bi-weekly contributions made by the Commonwealth and Commonwealth-related agencies; that when PEBTF was originally established in October 1988, only Commonwealth and Commonwealth-related agencies submitted contributions; that on March 1, 1994, PEBTF began to permit private employers to participate in PEBTF and accepted contributions from them; that the United States Department of Labor ("DOL") sent PEBTF a letter dated July 12, 1996 confirming PEBTF's ERISA status based upon increased private employer contributions; that in 1996 and 1997, PEBTF filed a form ("Form 5500") with the DOL that ERISA requires; and that by January 1, 1998, most of the private employers contributing to PEBTF had withdrawn, causing PEBTF to relinquish ERISA status and resume as a governmental plan. No plan document or other writing evidencing the terms of PEBTF was included in the record. The only

5. We note that although PEBTF designated these three exhibits as "affidavits," they do not satisfy the requirements of an affidavit under the Pennsylvania Rules of Civil Procedure. Not one of them is based on personal knowledge, as is required under Pa.R.C.P. 1035.4; not one of them is sworn, affirmed or made subject to the penalties of 18 Pa.C.S. § 4904, as is required under Pa.R.C.P. 76. We also note that for the most part, verified or certified copies of the documents referred to in the exhibits are not attached, as Pa.R.C.P. 1035.4 requires. Lastly, we note that the exhibits are largely testimonial in nature, which may run afoul of the rule announced in *Nanty–Glo v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932). *See Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 553 A.2d 900, 903 (1989) ("Testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury.") (quotation omitted). Appellant, however, did not raise any such issues in the trial court. Therefore, any objections to the exhibits were waived. *See* Pa.R.A.P. 302(a); *see also Harber Philadelphia Center City v. LPCI Limited Partnership, LCCO*, 764 A.2d 1100, 1104–05 (Pa.Super.Ct.2000).

documents attached to the Teague Exhibit were a copy of the DOL's July 1996 letter and copies of the Forms 5500.

The Schantzenbach Exhibit included summaries of contributions made to PEBTF from 1993 to 1999, and stated that a review of PEBTF financial records showed that prior to March 1994, private employer contributions amounted to approximately $12,000 per month; that beginning in March 1994, the private employer contributions increased to approximately $270,000 per month; and that by January 1, 1998, the private employer contributions decreased to approximately $82,000 per month.

The Ribic Exhibit summarized contributions made to PEBTF in schedules and charts, and stated that PEBTF's general ledger records showed that private contributions were $842,112 in 1994; $2,468,253 in 1995; $2,745,227 in 1996; $1,589,358 in 1997; $336,670 in 1998; and $173, 924 in 1999.

Appellant filed a Brief in Opposition to PEBTF's Motion. Appellant's argument centered on the dates that PEBTF paid his medical and hospital bills, and relied on the analysis in *Wimer v. Pennsylvania Employees Benefit Trust Fund*, No. 5322 of 2001 (C.P.Westmoreland, March 11, 2002), in which the court of common pleas ruled that PEBTF was entitled to subrogation for medical treatment payments made in 1997, while it was an ERISA plan, but not in 1998, after it had resumed governmental plan status. *Id.* at 8–10.[6] Focusing on the statement in the Teague Exhibit that as of January 1, 1998, private employer participation in PEBTF had diminished, Appellant argued that under *Wimer*, PEBTF's governmental plan status as of January 1998 rendered summary judgment improper because there was no evidence of record as to when PEBTF made the payments that would give rise to a subrogation claim against him. Appellant also contended that nothing in his federal complaint amounted to a judicial

6. In *Wimer*, the status of PEBTF was a matter of stipulation. The parties in that case filed Joint Stipulations of Fact, in which they stipulated that at the time of plaintiff's motor vehicle accident on October 3, 1997, PEBTF was an ERISA plan and that as of January 1, 1998, PEBFT relinquished its ERISA status and resumed the status of governmental plan. *Id.* at 8.

admission of PEBTF's ERISA status and that his entitlement to counsel fees should have operated to reduce PEBTF's judgment. Thereafter, Appellant supplemented the record with copies of statements of account and argued that even if PEBTF was an ERISA plan in 1997, it did not have a right to subrogation for payments made in 1998, and that the amount of PEBTF's alleged subrogation claim was open to question.

In an opinion and order, the trial court granted PEBTF's Motion. The trial court determined that at the time of Appellant's accident, the Fund was an ERISA plan because the Teague Exhibit stated that " 'the PEBTF continued to maintain its ERISA status [from at least 1996 when the DOL confirmed the [Fund's] ERISA status] through, and until January 1, 1998, when most of the private employers voluntarily withdrew with only *de minimis* private employer participation thereafter.' " Trial Court Opinion at 21 & n. 2 (alteration in original). The trial court also determined that as of January 1, 1998, PEBTF relinquished its ERISA status and became a governmental plan based on the statements to that effect in the Teague and Schantzenbach Exhibits and Appellant's Brief. *Id.* at 21 & n. 3. Next, concluding that the date of Appellant's accident, being "manipulation free," dictated PEBTF's entitlement to subrogation, the trial court rejected the analysis in *Wimer* and Appellant's argument that summary judgment was improper because no documentation existed in the record to indicate precisely when PEBTF paid for Appellant's medical treatment. *Id.* at 22–25. Therefore, the trial court held that since PEBTF was an ERISA plan on October 30, 1997, it had a right to subrogation against all payments it made on behalf of Appellant in connection therewith, and entered an order granting PEBTF's Motion, dismissing Appellant's Complaint, and entering judgment in PEBTF's favor on its Counterclaim in the amount of $43,795.94. *Id.* at 26 and Trial Court Order dated March 23, 2003.

Appellant filed a timely appeal in the Superior Court. In a published opinion, a majority of the Superior Court panel

upheld the trial court. *Scalice v. Pennsylvania Employees Benefit Trust Fund,* 854 A.2d 987 (Pa.Super.Ct.2004).[7]

The Superior Court first determined that the record established: that PEBTF was deemed a governmental plan and exempt from ERISA's coverage in 1988 inasmuch as it operated as a health and welfare plan, originated to provide health benefits to Commonwealth employees; that after extending coverage to private employees in 1994 and receiving the DOL's letter, PEBTF concluded that it was an ERISA plan as evidenced by its Form 5500 filings; that the DOL voiced no concern to PEBTF's filings and would have raised a challenge had it questioned PEBTF's ERISA status; and that when significant private sector employees left PEBTF, it reverted to an ERISA-exempt governmental plan. *Id.* at 990. As to PEBTF's status on October 30, 1997, the Superior Court concluded that PEBTF was an ERISA plan because the "documentation of the DOL's involvement in the trustee's decision to transition the PEBTF from a governmental plan to an ERISA plan provided the trial court with evidence to make the legal determination [that PEBTF] was indeed an ERISA-qualified plan at the time of Appellant's October 30, 1997 accident[,]" and Appellant offered no contradictory evidence on the matter. *Id.*

Considering next whether PEBTF was entitled to subrogation for payments made after January 1, 1998, when it had resumed governmental plan status, the Superior Court agreed with the trial court that "to conclude that for insurance purposes that the date the right to subrogation arises is at the time of payment, rather than the date of injury would cause legal and bureaucratic chaos." *Id.* at 992. Last, in light of the supplemental exhibit PEBTF placed in the record, the Superior Court rejected Appellant's argument that the amount of PEBTF's subrogation claim was unsettled and determined that Appellant's challenge to PEBTF's subrogation claim was

**7.** At this point, PEBTF was permitted to supplement the record on appeal with an "Affidavit In Support of Payments by Highmark Blue Cross Blue Shield to Altoona Hospital" to show the amount of payments it made on Appellant's behalf

unreasonable, negating any arguable right he had under equitable principles to an award of counsel fees for securing the settlement. *Id.* at 992–93. Accordingly, the Superior Court affirmed the trial court's March 23, 2003 Order granting PEBTF's Motion for Summary Judgment. *Id.* at 993.

Judge Kate Ford Elliot filed a Dissenting Statement, and would have followed *Triplett v. United Behavioral Health Systems, Inc.,* 1999 WL 238944 (E.D.Pa. March 29, 1999) (memorandum opinion). 854 A.2d at 993–94. In *Triplett,* the federal district court concluded, *inter alia,* that the origins of PEBTF supported the proposition that it was " 'established ... for its employees ... by the government of ... any State,' " and that therefore, it was a governmental plan not covered by ERISA. 1999 WL 238944 at *2–3 (quoting 29 U.S.C. § 1002(32)).

Appellant filed a petition for allowance of appeal, which was granted. *Scalice v. Pennsylvania Employees Benefit Trust Fund,* 581 Pa. 680, 863 A.2d 1148 (Pa.2004).

■■■ We begin with the Pennsylvania Rules of Civil Procedure that govern summary judgment. The Rules instruct in relevant part that the court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. Pa.R.C.P. 1035.2(1). Under the Rules, a motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. Note to Pa.R.C.P. 1035.2. For purposes of summary judgment, the record includes any pleadings, interrogatory answers, depositions, admissions, and affidavits. Pa.R.C.P. 1035.1. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion. *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 571 Pa. 580, 812 A.2d 1218, 1221 (2002).[8] In considering the merits of a motion for

8. As the issue as to whether there are no genuine issues as to any material fact presents a question of law, our standard of review is *de novo;* thus, we need not defer to the determinations made by the lower tribunals. Our scope of review, to the extent necessary to resolve the

summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Jones v. SEPTA*, 565 Pa. 211, 772 A.2d 435, 438 (2001). Finally, the court may grant summary judgment only where the right to such a judgment is clear and free from doubt. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205, 206 (1991).

We continue with ERISA, and observe that it was enacted to remedy long-standing abuses and deficiencies in the private pension system. *Rose v. Long Island Railroad Pension Plan*, 828 F.2d 910, 913 (2d Cir.1987); *see also* 29 U.S.C. § 1001. Generally speaking, ERISA applies to "any employee benefit plan." 29 U.S.C. § 1003(a). Under 29 U.S.C. § 1003(b)(1), however, certain employee benefit plans are excluded from the Act's substantive and procedural requirements. *See supra* n. 3. One such exclusion is the governmental plan, which, as we noted, is defined in 29 U.S.C. § 1002(32). *See id.*

We now turn to PEBTF's Motion for Summary Judgment. The threshold issue upon which PEBTF's entitlement to a judgment as a matter of law was premised was that PEBTF had the benefit of ERISA's preemption of the MVFRL's anti-subrogation provision. So as to assert ERISA's preemption of the MVFRL, PEBTF contended that from March 1, 1994 until January of 1998, it was an ERISA plan because it was no longer subject to the governmental plan exclusion.[9] PEBTF argued in the trial court and continues to argue on appeal that three purported facts are conclusive of this issue: Appellant's judicial admission in his federal complaint that the district court had federal question jurisdiction; PEBTF's decision to

legal question before us, is plenary. *Buffalo Township v. Jones*, 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002).

**9.** We note that the record reveals that for purposes of PEBTF's entitlement to ERISA preemption, the only dispute between the parties is PEBTF's status during this time period. The parties do not dispute that PEBTF was an employee benefit plan under 29 U.S.C. § 1003(a), and that PEBTF was excluded from ERISA's coverage under 29 U.S.C. § 1003(b)(1) as a governmental plan within the meaning of 29 U.S.C. § 1002(32), from 1988 until March 1, 1994, and beginning again in January of 1998.

view and conduct itself as an ERISA plan due to increased private sector employer participation; and the DOL's confirmation of that decision.

We disagree. Neither PEBTF's characterization of the record, nor its position that the record establishes that it was no longer a governmental plan and thereby covered by ERISA on October 30, 1997, has merit. First, Appellant's allegation of federal question jurisdiction in his federal complaint, based on his anticipation of PEBTF's assertion of ERISA preemption, is not a judicial admission that PEBTF was an ERISA plan. *See Tops Apparel Manufacturing Co. v. Rothman*, 430 Pa. 583, 244 A.2d 436, 438 & n. 8 (1968) (reiterating that the term "judicial admission" refers to an advantageous allegation of fact that is made by a party in a pleading or stipulations or the like). Furthermore, contrary to PEBTF's assertion, the label that PEBTF assigned itself under ERISA is irrelevant. PEBTF's status as a governmental plan is a matter for the court to decide by construing 29 U.S.C. § 1002(32) and determining whether or not it applies. *See, e.g., Hightower v. Texas Hospital Ass'n*, 65 F.3d 443 (5th Cir.1995) (construing the meaning of 29 U.S.C. 1002(32) and applying that construction to the plan at issue); *Silvera v. Mutual Life Ins. Co. of New York*, 884 F.2d 423 (9th Cir.1989) (same); *Roy v. Teachers Ins. and Annuity Ass'n*, 878 F.2d 47 (2nd Cir.1989) (same); *Rose*, 828 F.2d at 910 (same).[10] And finally, despite PEBTF's description of the DOL's actions, the agency did not confirm PEBTF's declaration of its ERISA

---

**10.** For the first time on appeal in the Superior Court, Appellant raised that ERISA's definition of a governmental plan in 29 U.S.C. § 1002(32), which speaks of "a plan established or maintained" for its employees by the government of any state, rendered summary judgment in PEBTF's favor improper. *See supra.* n. 3. In this regard, Appellant pointed out that 29 U.S.C. § 1002(32) is written in the disjunctive, and argued that since PEBTF admitted that it was established in 1988 as a governmental plan, federal case law would hold that PEBTF satisfied the Act's definition, regardless of how it was maintained thereafter. Appellant did not raise this issue on summary judgment in the trial court. *See supra.* pp. 168–69, 883 A.2d p. 433. Therefore, the issue was waived in connection with PEBTF's entitlement to summary judgment. Pa.R.A.P. 302(a); *see also Harber Philadelphia Center City*, 764 A.2d at 1104–05.

plan status. There is no authority to support the proposition that the DOL's silence in the face of PEBTF's Form 5500 filings has any legal significance in this context. In addition, the DOL's correspondence to PEBTF in July of 1996 was only an information letter, setting forth the DOL's previously stated view in connection with other inquiries "that the inclusion of more than a *de minimis* number of private sector employees as participants in an otherwise governmental plan will result in the plan no longer having the status of a governmental plan within the meaning of section 3(32) of ERISA[;]" it did not address PEBTF's status under ERISA one way or the other.[11] Therefore, we conclude that PEBTF failed to show that the record established that on October 30, 1997, it was an ERISA plan entitled to ERISA's preemption of the MVFRL's anti-subrogation provision and that it was entitled to a judgment as a matter of law. *See* Pa.R.C.P. 1035.2(1). Accordingly, we hold that the Superior Court erred in affirming the trial court's March 23, 2003 Order.

For these reasons, we reverse the order of the Superior Court affirming the trial court's order granting PEBTF's motion for summary judgment and entering judgment in favor of PEBTF, and remand this case to the trial court for further proceedings consistent with this opinion.[12]

Justice CASTILLE did not participate in the consideration or decision of this case.

Justice NEWMAN files a concurring opinion.

11. We observe that PEBTF placed no proof in the record as to number of its participants who were private sector employees at any given point in time.

We also make clear that we take no position on the merits of PEBTF's interpretation of the DOL's position that PEBTF could establish that it was an ERISA plan and no longer a governmental plan under 29 U.S.C. § 1002(32) on October 30, 1997 by proving that it had more than a *de minimis* number of private sector employees at some point between March 1, 1994 and January of 1998.

12. In light of our disposition, we need not and do not consider the merits of any of the other issues resolved on summary judgment by the trial court and affirmed on appeal by the Superior Court.

Justice NEWMAN, concurring.

While I join the Majority Opinion, I write separately to further develop my reasoning in reaching this result. In particular, the argument of the Pennsylvania Employees Benefit Trust Fund (PEBTF) concerning the guidance given by the Department of Labor (DOL) in the shifting of a governmental plan from exempt to non-exempt pursuant to the Employees Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, is unsubstantiated.

As noted by the Majority, Appellant did not raise the disjunctive language in the statute governing the instant matter, 29 U.S.C. § 1002(32), in the court below. Maj. Op. at 173 n. 10, 883 A.2d at 436 n. 10. As such, the issue is waived. If this issue is raised in the future, it may render moot the discussion of the DOL's apparent allowance of the change in categorization of a plan from governmental to non-governmental. *See Triplett v. United Behavioral Health Systems, Inc.*, 1999 WL 238944 (E.D.Pa.1999) (holding that, based upon the plain language of 29 U.S.C. § 1002(32), a plan formed as a governmental plan must remain a governmental plan). However, until that time, I note that the interpretation of an agency concerning a regulation within its scope is entitled to deference. *See Uniontown Area School District v. Pennsylvania Human Relations Commission*, 455 Pa. 52, 313 A.2d 156, 169 (1973) (citing *American Telephone & Telegraph Co. v. United States*, 299 U.S. 232, 57 S.Ct. 170, 81 L.Ed. 142 (1936)). As such, the guidance given by the DOL in determining the criteria for becoming a non-governmental plan should be heeded.

In 1996, Appellee requested information from the DOL regarding its planned extension of coverage to private sector employees and asked how that would affect its status under the governmental plan exemption of ERISA. The DOL responded in an Opinion Letter (Letter), which Appellee argues states that covering more than a *de minimis* number of private sector employees would result in a loss of the governmental plan exemption and ERISA qualification. Appellee relied on the Letter as showing that Appellee was indeed

ERISA qualified until January of 1998, when it voluntarily relinquished its ERISA status and its right to subrogation. Both the trial court and the Superior Court used the Letter, as well as the lack of challenge from the DOL of the filing of ERISA required documents, as proof that Appellee had gained ERISA status.

At the heart of Appellee's argument is the Letter's reference to a 1995 DOL Opinion Letter (Letter 95–27A), which implies that a non-governmental employee coverage of approximately eight percent still amounts to *de minimis* coverage of private sector employees. *See http://www.dol.gov/ebsa/programs/ori/advisory95/95–27a.htm* (last visited 7/26/05). In Letter 95–27A, the DOL stated that 270 private sector employees out of 3500 participants in the plan, approximately 7.7%, was insufficient to exceed the *de minimis* criterion; as such, the plan was still considered a governmental plan for failing to meet the *de minimis* standard concerning non-governmental employee coverage. Although opinion letters are not necessarily binding, and refer only to the factual situation related therein, a material issue of fact arises as to whether or not Appellee falls within the governmental plan exemption. Moreover, the DOL's interpretation should be given weight when determining the status of a party pursuant to ERISA. *See Uniontown Area School District, supra.*

In the present case, PEBTF, by its own admission, had more than 85,000 participants, of which approximately 1,000, or 1.2%, were private sector employees. It should be noted that Appellant submits his own criteria stating that in 1997, total Commonwealth contributions to PEBTF amounted to $285,066,966.00, and private contributions in 1997 were a mere $1,589,358.00. Using these figures, the non-government employee contributions totaled a little more than one-half of one percent (0.5%). The Letter did not address the particular situation of Appellee, but merely stated that a plan must include more than a *de minimis* number of private sector employees. By virtue of the reference to Letter 95–27A, it is reasonable to interpret the Letter as stating that Appellee was still a governmental plan. However, Appellee argues that the

sheer number of employees, although small by percentage, may be the deciding factor in determining whether a plan still falls within the governmental plan exemption. Appellee cites no case law or opinion letter to support its solely numeric or percentage based criterion for determining ERISA status.

Additional research would have revealed supplementary DOL guidance. In Letter 95–15A, the DOL concluded that a two percent composition of private sector employees did not exceed the *de minimis* standard, which is a greater percentage than the one in the instant matter. The generic Letter sent to Appellee, combined with a reading of the two other DOL opinion letters, suggests that the trial court and Superior Court were hasty in classifying Appellee as ERISA qualified. Accordingly, we must determine the tipping point in terms of percentages or numbers of non-government employees covered that will cause the governmental plan exemption to be lost.

I am sympathetic to the argument by Appellee that it would be a breach of fiduciary duty pursuant to 'ERISA, subjecting its members and the funds itself to fines, if Appellee failed to file the appropriate ERISA forms when ERISA qualified. As a result of this duty, Appellee argues that it is in the best position to determine its status pursuant to ERISA and should not be penalized for attempting to avoid the harsh consequences, labeled draconian by Appellee, imposed by ERISA for failure to comply with its terms. However, as noted by *Triplett, supra,* and the dissent in the Superior Court, a litigant's attempt to classify itself, even if believed to be correct, does not make it true. "[T]here is no reason to think that a plan's determination of its status under ERISA is any more meaningful than any litigant's determination of its status under any statute. I thus find that Appellee's interpretation of itself as a non-governmental plan is not relevant." *Triplett,* 1999 WL 238944 at *3.

Moreover, an additional letter asking for clarification from the DOL, or a commonsense interpretation of the DOL's approach to the *de minimis* standard, would have led to the conclusion that PEBTF was still a governmental plan pursu-

ant to ERISA and, therefore, exempt and subject to the MVFRL. The generic response was not an invitation to Appellee to interpret itself as it saw fit. In the case *sub judice*, PEBTF covered a mere 1.2% of private sector employees contributing approximately one-half of one percent (0.5%) in monetary terms. As such, the mathematical data available to PEBTF, which the DOL brought to its attention, clearly indicate that its coverage of private sector employees did not exceed the *de minimis* threshold.

Although the DOL has not promulgated an exact number required to remove a plan from the definition of a governmental plan, as stated above, the DOL has found that two percent private sector coverage is insufficient. DOL Opinion Letter 95–15A. Moreover, the district court in *Triplett, supra,* addressed PEBTF's ERISA categorization as being a governmental plan and, therefore, non-ERISA qualified. In addition, other jurisdictions have addressed the topic of *de minimis* for purposes of removing a plan from the governmental plan exemption. In *Kirkpatrick v. Merit Behavioral Care Corp.,* 70 F.Supp.2d 443 (D.Vt.1999), the Vermont District Court stated that, in a case involving 7.6% private employees, "[m]oreover, given the small number of non-governmental employees involved, the governmental plan exception's purpose is not violated and its scope is not unduly broadened by placing the Schools Plan within the exception." *Id.* at 448. Furthermore, the United States District Court for the District of Maine addressed the issue in *Hall v. Maine Municipal Employees Health Trust,* 93 F.Supp.2d 73 (D.Me.2000):

> In this case, MMEHT has allowed the employees of a small number of non-profit organizations who perform municipal functions to participate in the Trust since 1990. Of the 16,399 employees participating in MMEHT, 609, or 3.7, are non-governmental employees. The Court is satisfied that this number of non-governmental employees is *de minimis.*

*Id.* at 81 (citing *Kirkpatrick* and *Triplett*) (footnotes deleted).

I find the reasoning of these courts to be persuasive and conclude that, because of the DOL letters addressing *de minimis* in prior scenarios and the small percentage of non-

governmental employees at stake here, PEBTF was a governmental plan exempt from ERISA during the period in question. Accordingly, state law applies pursuant to Section 1720 of the MVFRL, 75 Pa.C.S. § 1720, and Appellee is not entitled to subrogation.